754 So.2d 48 (1999)
Regina GARCIA, etc., et al., Appellants,
v.
LIFEMARK HOSPITALS OF FLORIDA, et al., Appellees.
No. 99-77.
District Court of Appeal of Florida, Third District.
October 20, 1999.
Rehearing Denied May 2, 2000.
Grossman & Roth; Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel Perwin, Miami, for appellants.
Bunnell, Woulfe, Kirschbaum, Keller, Cohen & McIntyre and Nancy W. Gregoire and Gregg A. Toomey, Fort Lauderdale; Parenti, Falk, Waas, Hernandez & Cortina, and Gail Parenti, Coral Gables, for appellees.
Before NESBITT, GODERICH, and SORONDO, JJ.
NESBITT, J.
The personal representative of an estate appeals a final order dismissing her first amended complaint with prejudice in a wrongful death case she brought against a hospital, the emergency room providers, and the emergency room treating physicians. We affirm.
On July 27, 1995, Ramon Garcia was admitted to the emergency room at Palmetto General Hospital after overdosing on numerous medications. Mr. Garcia had recently undergone a surgical fusion. Doctor Armando Fernandez diagnosed this *49 as an accidental overdose, performed a gastric lavage, and discharged Mr. Garcia. Doctor Fernandez did not request a psychiatric consult and did not recommend voluntary admission to the hospital or a psychiatric facility for further evaluation or treatment. Two days later, on July 29, 1995, Mr. Garcia was involved in a single car accident on the Palmetto Expressway whereby he crashed into a concrete dividing wall in the vicinity of an exit. Once again, Mr. Garcia was brought to the emergency room. This time, he was treated by Dr. Pablo Alonso.
The personal representative's amended complaint alleges that the police report, made at the time of the accident, should have put the hospital on notice that the accident was a suicide attempt. The amended complaint further alleges that hospital personnel failed to note Mr. Garcia's visit of two days earlier; failed to take a proper history; failed to request a psychiatric consult; and failed to speak with Mr. Garcia's family. Before the physical work up was complete, Mr. Garcia asked to be released. Soon thereafter, he was released against medical advice. After returning home, Mr. Garcia committed suicide. The lower court dismissed the first amended complaint with prejudice. Regina Garcia, as personal representative of the estate, appeals. For the following reasons, we affirm.
Generally, a doctor is not liable for the suicide of a patient. See Paddock v. Chacko, 522 So.2d 410 (Fla. 5th DCA 1988). An exception to this general rule exists when the patient is confined to a hospital. Id. "Where a patient has surrendered himself to the custody, care and treatment of a psychiatric hospital and its staff, liability may be predicated upon the hospital's failure to take protective measures to prevent the patient from injuring himself." Id. at 417. In the instant case, Mr. Garcia was never confined to the hospital. Thus, it seems elementary that the hospital is not liable. However, the appellants argue that although Mr. Garcia was not confined, the doctors still had a duty to properly diagnose and treat all of his ailments, including his suicidal tendencies. We disagree.
The existence of a legal duty is not a question for the jury, but rather a question of law for the court. Id. at 411-12. We hold that under the facts of this case, the doctors did not have a duty to treat Mr. Garcia for his psychiatric ailments. Doctors Fernandez and Alonso each treated Mr. Garcia in an emergency room setting, where the fast paced atmosphere does not lend itself to the establishment of a close, personal relationship between physician and patient. The nature of an emergency room physician's job is to treat the patient for the medical emergency which brought them there, and move on. This is precisely what Doctors Fernandez and Alonso did.
Doctors do not have a duty to treat each of their patients for every conceivable medical condition that they might have. For example, if a person goes to an ophthalmologist because they have an eye infection, one could hardly contend that there is a duty for the doctor to diagnose and treat that patient for hemorrhoids. Likewise, it is even more difficult to argue that this doctor has a duty to diagnose and treat that patient for obsessive compulsive disorder. Imposing such a duty takes us down the path of clairvoyance. Boynton v. Burglass, 590 So.2d 446, 448 (Fla. 3d DCA 1991) (quoting Tarasoff v. Regents of Univ. of California, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 354 (1976) (Mosk, J., concurring and dissenting)). This is because of the nature of psychiatry. "The outward manifestations of infectious diseases lend themselves to accurate and reliable diagnoses. However, the internal workings of the human mind remain largely mysterious." Id. at 450.
Thus, it is difficult to see how the physicians in this case had a duty to treat Mr. Garcia for his psychiatric problems. Doctor Fernandez performed a gastric lavage *50 on a patient who had apparently accidentally overdosed on ten aspirin, four to five mylan, and five to six benadryl. This patient was recovering from a recent cervical fusion. Doctor Alonso did not even have the benefit of a complete examination of Mr. Garcia. Partway through the physical work up, Mr. Garcia asked to be, and was, released against medical advice. Appellants would now have us find that the nature of the doctor/patient relationship created a duty for these physicians to perform a variety of psychiatric functions, including notifying Mr. Garcia's family, obtaining information pertaining to Mr. Garcia's mental history, recommending a psychiatric consult, and informing Mr. Garcia that he could voluntarily confine himself for treatment. We hold that no such duty existed. Accordingly, the lower court's final order dismissing the first amended complaint with prejudice is affirmed.