795 So.2d 147 (2001)
John E. LAWLOR, III, As Personal Representative of the Estate of Bryan D. Wood, Appellant,
v.
Jacqueline ORLANDO, PhD, Appellee.
No. 1D00-1887.
District Court of Appeal of Florida, First District.
August 30, 2001.
Rehearing Denied October 3, 2001.
D. Andrew Vloedman of Perry & Vloedman, Gainesville; and James J. Taylor, Jr. of Taylor & Taylor, Keystone Heights, for appellant.
Marlene S. Reiss and Stephens Lynn Klein, Miami, for appellee.
PER CURIAM.
This is an appeal of an order granting final summary judgment in a cause of action for negligence in favor of a psychotherapist. The trial court found that the suicide of a former patient was not sufficiently foreseeable to impose a duty under the circumstances of this case. This appeal presents a case of first impression on the issue of whether a psychotherapist owes a legal duty to an outpatient client who commits suicide. Although Florida law would clearly impose a duty on a psychotherapist *148 for failure to safeguard a patient from harming himself in a custodial setting, see, e.g., Paddock v. Chacko, 522 So.2d 410 (Fla. 5th DCA 1988), review denied, 553 So.2d 168 (Fla.1989), no Florida cases extend the duty of custodial supervision and care to the outpatient relationship between a psychotherapist and a patient. We affirm the trial court's granting of final summary judgment in favor of the appellee, Dr. Orlando, based on the court's finding of no legal duty under the facts of this case.
The appellant argues that Dr. Orlando owed a duty to the decedent, Dr. Wood, at the time of Dr. Wood's suicide and that there is a disputed issue as to whether the suicide was foreseeable such that the question of Dr. Orlando's negligent liability should go to a jury. However, the issue of duty is a question of law to be determined by the trial court as a "minimum threshold legal requirement for opening the courthouse doors" before the "more specific factual requirement" to prove causation can go to the trier of fact. McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992) (footnote omitted; emphasis in original). In determining the threshold issue of legal duty, a trial court is required to examine the factual allegations which go to the question of whether a duty was foreseeable. See McCain, 593 So.2d at 502, n. 1. Facts to support foreseeability can be relevant to both the element of duty and the element of proximate causation. Florida Power & Light Co. v. Periera, 705 So.2d 1359 (Fla.1998), citing McCain, 593 So.2d at 502. The necessary examination of facts, which the supreme court recognizes may be essential in determining whether or not a legal duty exists, does not make any part of the duty analysis a jury question.
In ruling on the defendant's motion for summary judgment, the court appropriately reviewed all the supporting materials, including the deposition and affidavit of plaintiff's expert. Under McCain, the trial court correctly considered all the factual allegations in performing the foreseeability analysis as to the duty element. While there is a foreseeability analysis that would be performed by the trier of fact in regard to proximate causation, the duty analysis of the trial court must result in a finding of duty as a matter of law before the issue of proximate causation becomes relevant. Id.
Upon our review of the record on appeal, we see nothing other than the opinion of plaintiff's expert to indicate that the suicide of Dr. Orlando's patient might have been foreseeable. The testimony of Dr. Wood's ex-wife and others who knew him during the time he was being treated by Dr. Orlando was that Dr. Wood showed no indication of suicidal tendencies; there is no evidence of suicide attempts, threats of suicide, nor any mention of suicide; and a suicide screening done in connection with Dr. Wood's brief incarceration only a few months prior to his suicide revealed no risk of suicide. There is evidence that Dr. Wood suffered from depression and met other risk factors, but that evidence does not necessarily create a foreseeable zone of risk of suicide for imposing a legal duty on Dr. Wood's psychotherapist.
We agree with the trial court's finding that the opinion testimony of plaintiff's expert was insufficient to impose a legal duty on Dr. Orlando in light of other facts and circumstances in this case and in light of relevant Florida law which has not yet imposed a legal duty on a psychotherapist for the suicide of a client who is being treated in an outpatient situation.
AFFIRMED.
*149 BOOTH and LEWIS, JJ., CONCUR; BENTON, J., DISSENTS WITH WRITTEN OPINION.
BENTON, J., dissenting.
The trial court granted summary judgment on grounds that any duty Jacqueline Orlando, the clinical psychologist whom Bryan D. Wood's estate has sued for professional malpractice, owed Dr. Wood had "lapsed at the time of the suicide." In denying the plaintiff's motion for rehearing, the trial court elaborated:
[E]ven if Dr. Orlando's treatment was found to be sub-standard, she did not have a continuing duty toward the patient who committed suicide more than three months after the last visit and who had experienced a number of intervening life circumstances following the last visit to Dr. Orlando.
While acknowledging that "the opinion of plaintiff's expert ... indicate[s] that the suicide of Dr. Orlando's patient might have been foreseeable," ante 795 So.2d at 148, today's majority opinion rests on the premise that "Florida law ... has not yet imposed a legal duty on a psychotherapist for the suicide of a client who is being treated in an outpatient situation."
In professional malpractice cases, the legal duty or "malpractice standard is to a significant extent defined in terms of professional standards and customs." Restatement (Third) of Torts: Liab. Physical Harm § 13 cmt. b (Tentative Draft No. 1, 2001). See O'Keefe v. Orea, 731 So.2d 680, 684 (Fla. 1st DCA 1998) (noting, in reversing dismissal of complaint against psychiatrist alleging malpractice on outpatients: "Tort law holds professionals to a more stringent standard than lay persons are required to meet."); Kockelman v. Segal, 61 Cal.App.4th 491, 71 Cal.Rptr.2d 552, 558 (1998) (holding that "psychiatrists owe a duty of care, consistent with standards in the professional community, to provide appropriate treatment for potentially suicidal patients, whether the patient is hospitalized or not"). The plaintiff's expert's affidavit addresses the question of pertinent professional standards in detail and in connection with the duty of professional care plaintiff contends that Dr. Orlando undertook to discharge in the present case:
13. Dr. Orlando has reported and the records that I have reviewed support the fact that Dr. Wood suffered from a major depression which was unrelenting from the time he first saw Dr. Orlando until he committed suicide.
. . .
17. Based on my review of the records, my training and education, and my experience as a licensed psychologist, I believe that Dr. Orlando's treatment of Dr. Wood fell below the prevailing professional standard of care in the following ways:
a) Dr. Orlando failed to develop an appropriate treatment plan specifying ultimate and instrumental outcomes for Dr. Wood's course of treatment;
b) Dr. Orlando failed to obtain an appropriate executed informed consent outlining a well defined treatment plan which should have included the potential benefits and costs of treatment, identify alternative courses of treatment and importantly obtain the client's agreement and consent;
c) Based on her professional conflict with Dr. Emily Hoon, Dr. Orlando lost her objectivity in treating Dr. Wood;
d) Dr. Orlando failed to institute a form of psychotherapy which incorporated accepted and recognized cognitive therapy procedures;
e) Dr. Orlando, through her therapy, encouraged Dr. Wood to adopt an external locus of control rather than an internal locus of control;

*150 f) Dr. Orlando failed to follow a course of psychotherapy which would have encouraged Dr. Wood to accept responsibility for his behavior; and
g) Dr. Orlando engaged in a dual relationship with Dr. Wood whereby she functioned both as treating psychologist and his expert witness;
18. In my opinion Dr. Orlando's failure to develop an appropriate treatment plan during her first sessions with Dr. Wood ... prevented her from being able to provide Dr. Wood with psychotherapy that could effectively address his major depression.
. . .
21. Dr. Orlando in her deposition describes herself as cognitive-behavioral in orientation. Based on my review of Dr. Orlando's records, I find no evidence that Dr. Orlando utilized accepted cognitive-behavioral therapeutic interventions throughout her treatment of Dr. Wood to alleviate Dr. Wood's major depression.
. . .
23. In my opinion, Dr. Orlando's failure to institute therapeutic interventions which would have encouraged Dr. Wood to take responsibility for his behavior resulted in Dr. Wood viewing himself as a passive victim of his environment and increasing feelings of hopelessness.
24. It is my opinion within a reasonable degree of psychological probability that Dr. Bryan Wood's deteriorating mental condition from 1988 through 1995 was the direct result of Dr. Orlando's failure to provide appropriate psychotherapy.
25. It is my opinion within a reasonable degree of psychological probability that Dr. Wood's suicide in August 1995 was caused by his depression remaining untreated throughout the time he was under the care of Dr. Jacqueline Orlando so that his level of depression and corresponding sense of hopelessness reached a level that he could no longer endure.
26. It is my opinion within a reasonable degree of psychological probability that by January 1994 Dr. Wood's depression had reached a point that if appropriate psychotherapy was not provided Dr. Wood's continued deterioration was a certainty and suicide was a foreseeable consequence.
27. It is my opinion within a reasonable degree of psychological probability that if Dr. Jacqueline Orlando had provided Dr. Wood with psychotherapy within the standard of care Dr. Wood's depression would have been effectively alleviated and he would have acquired the necessary skills to overcome and manage any future episodes of depression.
28. It is my opinion within a reasonable degree of psychological probability that if Dr. Orlando had provided Dr. Wood with psychotherapy within the standard of care, Dr. Wood would not have committed suicide.
On this record, I cannot agree that, as a matter of law, Dr. Orlando had no duty to provide "appropriate psychotherapy" or that no factual dispute exists about whether her alleged failure to do so proximately caused the suicide. See Kockelman, 71 Cal.Rptr.2d at 557; Edwards v. Tardif, 240 Conn. 610, 692 A.2d 1266, 1270-71 n. 7 (1997) ("In our view, the circumstances in which a physician may be liable for a patient's suicide are not limited only to when the patient is in the physician's custody. Instead, the relevant inquiry is whether a defendant failed to provide reasonable treatment for the patient and that failure proximately resulted in the patient taking his or her life."). See generally Patricia C. Cussman, Annot., Liability of Doctor, Psychiatrist, or Psychologist for *151 Failing to Take Steps to Prevent Patient's Suicide, 81 A.L.R. 5th 167, 2000 WL 1291002 (2000); Victor E. Schwartz, Civil Liability for Causing Suicide: A Synthesis of Law and Psychiatry, 24 Vand. L.Rev. 217, 246 (1971) (contending that liability for a patient's suicide caused by failure to provide adequate treatment ought not depend on whether the patient is in custody).
The Florida cases impose on psychotherapists no legal obligation to try to see that suicidal patients are locked up. See Garcia v. Lifemark Hosps., 754 So.2d 48, 49 (Fla. 3d DCA 1999) (holding emergency room personnel under no obligation to detain victim of apparent accident who chooses to leave against medical advice and later kills himself); Paddock v. Chacko, 522 So.2d 410, 411 (Fla. 5th DCA 1988) (holding that psychiatrist who had seen outpatient on a single occasion and prescribed appropriate medication was not liable for failing to have her civilly committed in an effort to prevent her suicide attempt). Recognizing any such putative duty could, indeed, have the perhaps counterproductive effect of discouraging despondent persons from seeking psychotherapy.
But the complaint in the present case does not allege that Dr. Orlando should have sought Dr. Wood's commitment. Reversing the judgment below would be fully compatible with the view that a psychotherapist has no duty to attempt to secure an outpatient's confinement for the patient's own protection. The complaint alleges only that Dr. Wood sought psychotherapy as an outpatient from Dr. Orlando who, as a clinical psychologist, held herself out as a provider of professional services which, it is alleged, Dr. Wood needed and should have been offered, but which Dr. Orlando failed to perform or to make available.
Whether any such omission proximately caused the plaintiff's decedent's suicide is properly a question for the jury, given the expert's affidavit. Cf. Dillmann v. Hellman, 283 So.2d 388, 389 (Fla. 2d DCA 1973) (affirming summary judgment where no affidavit contradicted treating psychiatrist's affidavit that his treatment of patient who later jumped from second story window conformed to community standards). Accordingly, I respectfully dissent.