903 So.2d 1064 (2005)
Maria TORRES, as parent and natural Guardian of Luis Torres, Appellant,
v.
John E. SULLIVAN, Jr., M.D.; John E. Sullivan, Jr., M.D., P.A.; SMH Physician Services, Inc., d/b/a First Physicians Group; Sarasota County Public Hospital Board, d/b/a Sarasota Memorial Hospital; Gary W. Easterling, M.D.; Gary W. Easterling, M.D., P.A.; and Florida Department of Health, Appellees.
No. 2D03-5227.
District Court of Appeal of Florida, Second District.
June 29, 2005.
*1065 Richard M. Shapiro of Shapiro Law Group, Bradenton; and Joel S. Perwin of Podhurst, Orseck, P.A., Miami, for Appellant.
Lynn H. Groseclose of Thompson, Goodis, Thompson, Groseclose & Richardson, P.A., Bradenton; and Heather C. Goodis, Thompson, Goodis, Thompson, Groseclose & Richardson, P.A., St. Petersburg, for Appellees John E. Sullivan, Jr., M.D., and John E. Sullivan, Jr., M.D., P.A.
Mark Hicks of Hicks & Kneale, P.A., Miami, for Appellees Gary W. Easterling, M.D., and Gary W. Easterling, M.D., P.A.
No appearance for Appellees SMH Physician Services, Inc., d/b/a First Physicians Group; Sarasota County Public Hospital Board, d/b/a Sarasota Memorial Hospital; and Florida Department of Health.
KELLY, Judge.
Maria Torres, as parent and natural guardian of Luis Torres, appeals an order granting a partial summary judgment that dismissed her claim of medical malpractice against John E. Sullivan, Jr., M.D.; John E. Sullivan, Jr., M.D., P.A.; and SMH Physician Services, Inc., d/b/a First Physicians Group (collectively, Dr. Sullivan). In entering summary judgment in favor of Dr. Sullivan, the trial court rejected testimony from Mrs. Torres' expert witness regarding what the standard of care required of Dr. Sullivan. Because the issue of whether Dr. Sullivan's actions met the appropriate standard of care involved a disputed issue of fact, we reverse.
Maria Torres sued Dr. Sullivan alleging he was negligent in failing to deliver Luis by Cesarean section. The complaint alleged that Dr. Sullivan's failure to obtain a complete history from Mrs. Torres caused him to deliver Luis vaginally and that Luis was injured as a result.
Luis was considered a large baby, particularly in light of Mrs. Torres' small stature. This fact was known to Dr. Sullivan. Mrs. Torres had previously given birth vaginally to a large baby. This fact was also known to Dr. Sullivan. That delivery resulted in an injury to the baby that was similar to the injury Luis sustained, although eventually that child fully recovered. At the summary judgment hearing, Dr. Sullivan contended he was unaware of the injury to the prior baby when he made the decision to deliver Luis vaginally.
Mrs. Torres' medical expert, Dr. Schifrin, testified in his deposition regarding the standard of care:
[I]t was my allegation that it is inappropriate to undertake vaginal delivery in this patient. That is predicated on his knowledge ofor what he either knew or should have known about the previous delivery.... But at a minimum he was obliged to know about it. He may have known about it. He should have known about it. He should have known about it.

*1066 There is some uncertainty about the information he had. Okay? I concede that. This is information he had to have, he should have had, he needed to have to be able to make a proper diagnosis.
Sullivan has one responsibility, and the responsibility is to say did you have a problem with your previous delivery? Was there a problem with the baby after your previous delivery?
To the mother. Right there in front of her. That would dischargeif the answer to that is no, if she says no, if she says no, he....
[T]hen he met the standard of care. He's got to have done all of that....
In an affidavit submitted in opposition to the motion for summary judgment, Dr. Schifrin stated, "It is my opinion that ... it is the standard of care for an obstetrical physician in rendering obstetrical care and treatment to ask the mother, in this case Maria Torres, whether there was a problem with her [previous] baby ... after her delivery." He also stated that Dr. Sullivan "had an independent duty to ask Maria Torres whether there was a problem with the baby ... after her prior delivery."
In his motion for summary judgment, Dr. Sullivan contended that the undisputed facts discovered after Dr. Schifrin's deposition established that "the conditions enumerated by [the expert] did exist at the time of delivery." Specifically, the motion was premised on the representation that Dr. Sullivan had testified that "Ms. Torres had confirmed in the history she provided that there were no problems with her prior deliveries or children." Thus, Dr. Sullivan argued that it was undisputed that he met the standard of care espoused by Dr. Schifrin.
What the record actually reflects, however, is that Dr. Sullivan never questioned Mrs. Torres. Mrs. Torres did not speak English. When she was admitted, a Spanish-speaking nurse was called in to translate questions on the admissions intake form and record Mrs. Torres' answers. Regarding Mrs. Torres' history, the question the nurse asked was whether Mrs. Torres experienced any complications with her prior deliveries, to which Mrs. Torres answered, "no." At the summary judgment hearing, Dr. Sullivan's counsel acknowledged that no one specifically asked Mrs. Torres if there were problems with the baby after the prior deliverythe question Dr. Schifrin testified was specifically required to meet the standard of care. Dr. Sullivan's argument at the summary judgment hearing was therefore not that he had actually done that which Dr. Schifrin contended was required, but that all that was required was the single question the nurse posed to Mrs. Torres.
In granting the summary judgment, the trial court stated:
Wouldn't you think that a mother in response then to a question from a doctor, was there a complication or a problem with the birth, that would be the first thing that the mother would remember and relate?
How different could the question have been asked other than the way the nurse asked it in this case?
Ultimately, the trial court concluded that to distinguish between the two questionswhether there were complications with the delivery versus whether there was a problem with the babywas "to engage in linguistic convolutions and semantical [sic] argument." The court explained that "if this doctor, this expert, [Dr. Schifrin] is saying, well, it's not enough for you to say that it was just are there any complications with the delivery or complications with the birth, but you must ask other questions than that, then I'm not going to find that to be believable."
*1067 Dr. Schifrin clearly testified, in his deposition and via affidavit, that the standard of care required Dr. Sullivan to personally ensure that Mrs. Torres answered two questions. The undisputed evidence established that she was asked only one. Thus, the trial court could only have granted summary judgment in favor of Dr. Sullivan by assessing the weight or credibility of the testimony of Dr. Schifrin or by determining that Dr. Schifrin had incorrectly stated the standard of care applicable to Dr. Sullivan under the circumstances of this case. Either way, the trial court erred.
In ruling on a motion for summary judgment, it is improper for the trial court to weigh the expert's testimony. See Wolford v. Ostenbridge, 861 So.2d 455, 457 (Fla. 2d DCA 2003). It is the jury that will have to decide whether to accept or reject Dr. Schifrin's opinion regarding what the standard of care required of Dr. Sullivan.
Appellees implicitly recognize that it was improper for the trial court to weigh Dr. Schifrin's testimony because in their argument on appeal they attempt to characterize the trial court's decision as one finding that, as a matter of law, Dr. Sullivan had no "duty" to specifically ask Mrs. Torres about problems with the prior baby. Appellees confuse the question of whether a duty is owed with the question of what standard of care is required to satisfy that duty.
It is undisputed that Mrs. Torres was Dr. Sullivan's patient. As a matter of law, a physician owes a duty to a patient to "use the ordinary skills, means and methods that are recognized as necessary and which are customarily followed in the particular type of case according to the standard of those who are qualified by training and experience to perform similar services in the community or in a similar community." Brooks v. Serrano, 209 So.2d 279, 280 (Fla. 4th DCA 1968) (citing Lab v. Hall, 200 So.2d 556 (Fla. 4th DCA 1967)). What was placed in issue by Dr. Sullivan's motion for summary judgment was not whether Dr. Sullivan owed a duty to Mrs. Torres but whether he had done everything that was required of him by the standard of care. As explained below, what the standard of care requires is a question of fact, not a question of law.
To prevail in a medical malpractice action, a plaintiff must identify the standard of care owed by the physician, produce evidence that the physician breached the duty to render medical care in accordance with the requisite standard of care, and establish that the breach proximately caused the injury alleged. Moisan v. Frank K. Kriz, Jr., M.D., P.A., 531 So.2d 398, 399 (Fla. 2d DCA 1988). The prevailing professional standard of care is that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers. See § 766.102(1), Fla. Stat. (1997).
The standard of practice and treatment within a particular medical specialty when physicians in that field are presented with a particular set of circumstances is "a subject well beyond the jury's expertise," not a matter "within the comprehension of laymen." Thomas v. Berrios, 348 So.2d 905, 908-09 (Fla. 2d DCA 1977); cf. Crovella v. Cochrane, 102 So.2d 307, 310 (Fla. 1st DCA 1958) (noting that "[j]urors and courts do not know and are not permitted arbitrarily to say what are the proper methods of diagnosing and treating human ailments" and that thus, it is the proper subject of expert opinion testimony); see also W. Page Keeton et al., Prosser & Keeton on the Law of Torts 188 (5th ed. 1984) (stating that "[s]ince juries composed of laymen are normally incompetent *1068 to pass judgment on questions of medical science or technique, it has been held in the great majority of malpractice cases that there can be no finding of negligence in the absence of expert testimony to support it"). As a result, expert testimony is generally required to establish the standard of care prevalent in a particular medical field. Moisan, 531 So.2d at 399; Thomas, 348 So.2d at 908-10.
In this case, the question of whether Dr. Sullivan employed the correct procedures for the diagnosis and treatment of Mrs. Torres and her child cannot be answered without expert testimony. See Thomas, 348 So.2d at 908 (stating that expert testimony is always required to prove a case based on an incorrect diagnosis or the adoption of the wrong method of treatment). Thus, Dr. Schifrin's testimony and affidavit were required for Mrs. Torres to prove her case against Dr. Sullivan. Logically, if expert testimony is required to establish what Dr. Sullivan should have done, it is a matter that is beyond the expertise of a layperson and thus is a matter that neither the trial court nor this court may determine as a matter of law.
While we have found no Florida case addressing this specific issue, cases from other jurisdictions have concluded that whether an expert's testimony accurately reflects the standard of care applicable to the circumstances of the case is a question of fact to be resolved by the trier of fact. See Fisherman's Wharf Assocs. II v. Verrill & Dana, 645 A.2d 1133, 1136 (Me.1994) (citing Levesque v. Chan, 569 A.2d 600, 602 (Me.1990)); see also Burke v. Scaggs, 867 A.2d 213 (D.C.2005) (recognizing that it is for the jury to determine the applicable standard of care in a particular case); Dooley v. Everett, 805 S.W.2d 380 (Tenn. Ct.App.1990) (stating that while whether a duty is owed is a question of law, once a duty is established, the scope of the duty or the standard of care is a question of fact to be decided by the trier of fact). Similarly, we conclude that the issue presented here regarding the standard of care was a disputed issue of fact that could not be resolved by the trial judge in a motion for summary judgment. Accordingly, it was error for the trial court to enter summary judgment in favor of Dr. Sullivan.
Reversed and remanded for further proceedings.
FULMER and DAVIS, JJ., Concur.