932 So.2d 365 (2006)
Scott SWEET, Appellant,
v.
Michael F. SHEEHAN, M.D., Appellee.
No. 2D04-2744.
District Court of Appeal of Florida, Second District.
March 24, 2006.
Rehearing Denied June 6, 2006.
*366 Philip M. Burlington, P.A., West Palm Beach, and David G. Eaton of Eaton & Powell, Tampa, for Appellant.
Bradley S. Bell, Richard B. Mangan, Jr., and R. Clifton Acord, II, of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Tampa, for Appellee.
KELLY, Judge.
Scott Sweet sued his psychiatrist, Dr. Michael F. Sheehan, for medical malpractice after he sustained severe neurological damage as a result of a failed suicide attempt. The facts underlying Sweet's lawsuit are largely undisputed. Sweet began seeing Dr. Sheehan for depression and obsessive compulsive disorder in December 1993. In January 1997, Sweet told Dr. Sheehan that he felt hopeless and depressed and that he was considering suicide. Because he feared Sweet would take his own life, Dr. Sheehan recommended that Sweet admit himself to a hospital for treatment. When Sweet refused, Dr. Sheehan called 911, resulting in Sweet's hospitalization. Sweet did not attempt to take his own life at that point, and after his release from the hospital, he continued his sessions with Dr. Sheehan.
In mid-November 2002, Dr. Sheehan diagnosed Sweet at a regular office visit as suffering from severe depression and suicidal ideation, but he did not recommend *367 that Sweet be hospitalized. Within days, Sweet unsuccessfully attempted suicide by taking an overdose of medication Dr. Sheehan had prescribed. Shortly thereafter, Sweet telephoned Dr. Sheehan and told him of his suicide attempt. Dr. Sheehan did not recommend that Sweet admit himself to a psychiatric facility, and he did not notify Sweet's wife, parents, or son of the potential harm that could result if Sweet was not hospitalized. Days later, at a subsequent office visit, Sweet told Dr. Sheehan he was disappointed his suicide attempt failed. Dr. Sheehan again noted Sweet's severe depression, but he did not notify anyone of Sweet's condition or recommend hospitalization. The next day, Sweet took an overdose of drugs which had been prescribed by Dr. Sheehan. Sweet survived but suffered severe neurological damage.
In his complaint, Sweet alleged that Dr. Sheehan had a duty to exercise a level of care and treatment recognized as acceptable and appropriate by similar physicians and that he deviated from this accepted standard of care in one or more of the following respects: (1) failing to appropriately recognize and treat Sweet's severe depression, (2) failing to recommend to Sweet and his family that Sweet needed immediate hospitalization after his first suicide attempt, (3) failing to adequately inform Sweet and his family of the risks of not being hospitalized, and (4) failing to appropriately monitor the amount of medication prescribed.
Dr. Sheehan moved for summary judgment. He first argued that he did not owe a duty to Sweet. In support of this contention, he relied primarily on Paddock v. Chacko, 522 So.2d 410 (Fla. 5th DCA 1988), in which the Fifth District held that as a matter of law a psychiatrist has no duty to involuntarily hospitalize a patient.[1] Dr. Sheehan argued that because he was treating Sweet on an outpatient basis, he had no duty to prevent or attempt to prevent Sweet's overdose or attempted suicide by involuntarily hospitalizing him. In support of his motion, Dr. Sheehan submitted the affidavit of psychiatrist Richard B. Seely. Dr. Seely opined that Dr. Sheehan "met or exceeded the standard of care applicable to him," that Dr. Sheehan's treatment of Sweet, including the type and dosage of medication prescribed did not cause or contribute to Sweet's suicide attempt, and that Dr. Sheehan had no duty to hospitalize Sweet to prevent him from harming himself.
In opposition to Dr. Sheehan's motion, Sweet submitted the affidavit of psychiatrist Larry S. Kirstein. Dr. Kirstein noted the ten-year relationship between Dr. Sheehan and Sweet and opined that Dr. Sheehan deviated from the requisite standard of care by failing to appropriately evaluate, treat, and manage Sweet's severe depression after his initial suicide attempt including, but not limited to, recommending hospitalization to Sweet and his family. The trial court ultimately concluded that Dr. Sheehan owed no duty to Sweet and that there was no causal connection between Dr. Sheehan's alleged negligence *368 and Sweet's injuries. Sweet appeals from the summary judgment entered in favor of Dr. Sheehan.
Sweet first contends that the trial court erred when it determined that Dr. Sheehan owed no duty to Sweet. We agree. Florida law unquestionably recognizes that physicians owe their patients a duty to "use the ordinary skills, means and methods that are recognized as necessary and which are customarily followed in the particular type of case according to the standard of those who are qualified by training and experience to perform similar services in the community or in a similar community." Brooks v. Serrano, 209 So.2d 279, 280 (Fla. 4th DCA 1968); see also Pate v. Threlkel, 661 So.2d 278, 280 (Fla.1995); Torres v. Sullivan, 903 So.2d 1064, 1067 (Fla. 2d DCA 2005); but see Lawlor v. Orlando, 795 So.2d 147 (Fla. 1st DCA 2001) (holding that a psychotherapist did not owe a legal duty to an outpatient client who committed suicide notwithstanding the fact that the plaintiff's expert opined that the psychotherapist had failed to act in accordance with the relevant standard of care). Section 766.102(1), Florida Statutes (2004), codifies this duty, stating that a health care provider has a duty to act in accordance with the prevailing professional standard of care for that health care provider. Pate, 661 So.2d at 280. Thus, the relevant inquiry is not whether Dr. Sheehan had a duty, but whether Dr. Sheehan breached that duty by failing to treat Sweet in accordance with the standard of care required of him, and if so, whether this failure resulted in Sweet's injuries. See Moisan v. Frank K. Kriz, Jr., M.D., P.A., 531 So.2d 398, 399 (Fla. 2d DCA 1988) (holding that to prevail in a medical malpractice action, a plaintiff must identify the standard of care owed by the physician, establish that the physician breached the duty to render medical care in accordance with the requisite standard of care, and establish that the breach proximately caused the alleged injury).
The prevailing professional standard of care for a given health care provider "shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." § 766.102(1). In medical malpractice cases, the standard of care is determined by a consideration of expert testimony. Pate, 661 So.2d at 281; Torres, 903 So.2d at 1068. The record demonstrates that the affidavits and testimony of the parties' experts conflicted on the question of whether Dr. Sheehan acted within the applicable standard of care in assessing and treating Sweet's mental condition. To be entitled to a summary judgment, the moving party "must conclusively show the absence of any genuine issue of material fact." Holl v. Talcott, 191 So.2d 40 (Fla. 1966). Because Dr. Sheehan failed to demonstrate the absence of a genuine issue as to "the standard of care required and observed," he was not entitled to a summary judgment on this ground. See Holl, 191 So.2d at 46; see also Torres, 903 So.2d at 1068.
Dr. Sheehan alternatively argued that he was entitled to summary judgment because Sweet could not demonstrate a direct causal relationship between any alleged deviation from the standard of care and Sweet's injuries. To establish causation in a medical malpractice action, a plaintiff must show that the plaintiff's injury more likely than not resulted from the defendant's negligence. Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1020 (Fla.1984); Beisel v. Lazenby, 444 So.2d 953 (Fla.1984). Thus, to be entitled to a summary judgment Dr. Sheehan, as the moving party, had the burden to conclusively *369 establish that Sweet could not show that his injuries more likely than not resulted from Dr. Sheehan's alleged negligence. Dr. Sheehan relied on his expert's affidavit to support his contention; however, the expert's opinion was nothing more than a "net opinion,"[2] and thus it does not satisfy Dr. Sheehan's burden of establishing conclusively the absence of genuine issues of material fact. See Holl, 191 So.2d at 45. Accordingly, Dr. Sheehan was not entitled to summary judgment on this ground.
Because Dr. Sheehan failed to carry his burden to demonstrate conclusively the absence of any genuine issues of material fact, the trial court should not have granted his motion for summary judgment. Accordingly, we reverse the judgment in favor of Dr. Sheehan and remand for further proceedings.
Reversed and remanded for further proceedings.
VILLANTI and WALLACE, JJ., Concur.
NOTES
[1] Dr. Sheehan's arguments rest largely on his contention that no Florida case holds that a psychiatrist has a duty to hospitalize a patient against his will. However, Sweet's complaint does not allege that Dr. Sheehan should have forced Sweet's commitment. This contention was advanced in regard to Sweet's presuit investigation only. While Sweet has indicated in his brief that he may attempt to reassert this contention based on testimony from Dr. Sheehan indicating that under some circumstances the applicable standard of care might require him to attempt involuntary hospitalization, this issue was not before the trial court when Dr. Sheehan moved for summary judgment. Thus, it is not before us in this appeal, and we express no opinion regarding the merits of such a claim.
[2] "`[N]aked assertion[s]  unsupported by an expert medical explanation of its basis or the reason it was reached.'" Holl, 191 So.2d at 45.