SILBERMAN, Judge.
This case arose from the tragic suicide of Jacqueline Granicz, a fifty-five year-old wife and mother who was being treated for depression by her primary care physician. Jacqueline’s husband, Robert Granicz (“Granicz”), filed a medical malpractice action as personal representative of Jacqueline’s estate in which he asserted that Dr. Joseph S. Chirillo, Jr., breached his duty of care in treating Jacqueline and that her suicide resulted from that breach. Granicz named Dr. Chirillo, Joseph S. Chirillo, M.D., P.A., and Millennium Physician Group, LLC, as defendants (collectively referred to as “Defendants”). The trial court ultimately granted a final summary judgment against Granicz based on its determination that Dr. Chirillo did not have a legal duty to prevent Jacqueline’s suicide.
On appeal, Granicz argues that the court improperly characterized Dr. Chirillo’s duty as a duty to prevent Jacqueline’s suicide. Granicz asserts that, as set forth in his amended complaint, Dr. Chirillo had a duty to exercise reasonable care in his treatment of Jacqueline. Granicz argues that summary judgment was improper because he provided expert testimony setting forth the applicable standard of care, how it was breached, and how the breach proximately caused Jacqueline’s suicide. We agree and reverse.
The evidence Granicz provided to the court established that Jacqueline had a history of depression and was taking Prozac when she began seeing Dr. Chirillo in 2005. Dr. Chirillo switched Jacqueline to an antidepressant known as Effexor. Unbeknownst to Dr. Chirillo, Jacqueline stopped taking the Effexor in June or July of 2008 because of its side effects.
On October 8, 2008, Jacqueline called Dr. Chirillo’s office and spoke to his medical assistant. Jacqueline told the assistant she had not “felt right since late June-July.” Jacqueline reported that she was under mental strain and crying easily, she was not sleeping well and taking more sleeping pills, and she was having gastrointestinal problems. Jacqueline attributed these maladies to the Effexor, and she told the assistant she had stopped taking it. The assistant wrote this information in a note for Dr. Chirillo.
Dr. Chirillo read the assistant’s note shortly thereafter and decided to change Jacqueline’s antidepressant to Lexapro and refer her to a gastroenterologist. Dr. Chirillo’s office called Jacqueline and told her she could pick up samples of Lexapro and a prescription for the drug. But Dr. Chirillo’s office did not request that Jacqueline schedule an appointment with the doctor. Jacqueline picked up the samples and prescription later that day.
The next day, Granicz found Jacqueline’s body hanging in their garage. She had committed suicide but did not leave a note. Granicz was shocked because Jacqueline had never given him any indication she might be thinking of harming herself. Jacqueline’s adult daughter, Renee, was shocked as well. She had spoken to Jacqueline two days before her suicide, and Jacqueline had not shown any signs that she might be suicidal.
In the amended complaint, Granicz alleged that Dr. Chirillo breached his duty to exercise reasonable care in his treatment of Jacqueline by
(a) Failing to recognize that when the patient contacted his office on October 8, 2008 she was experiencing a change in symptoms, was depressed, and was *547 seeking medical intervention and guidance;
(b) Failing to speak with the patient and direct his staff to advise her to immediately come to the office for evaluation;
(c) Failing to refer her to a physician trained in the management of patients suffering from depression; and
(d) Failing to conduct a proper evaluation before prescribing Lexapro, an antidepressant known to cause suicidal idea-tions in some patients.
Granicz alleged that Jacqueline’s suicide was directly and proximately caused by these breaches.
Defendants eventually filed a motion for summary judgment asserting that Dr. du-rillo owed no duty to Jacqueline as a matter of law. Defendants argued that Dr. durillo had no duty to prevent Jacqueline from committing an unforeseeable suicide while not in his control. Defendants alternatively argued that the expert testimony that would be necessary to prove the case would be inadmissible as a violation of the rule against stacking inferences.[1]
In opposition to the motion, Granicz filed the deposition of Dr. durillo and the depositions of two expert witnesses: Tonia Werner, M.D., a board certified psychiatrist and assistant professor, and Michael Yaffe, M.D., a board certified internist and clinical assistant professor. Both experts testified that, given Jacqueline’s history and the information she conveyed in her October 8th phone call, the standard of care required Dr. durillo to see her, assess her condition to determine if she was having thoughts of suicide, and intervene if necessary. According to the experts, Dr. durillo should have been concerned that Jacqueline’s depression was worsening because she stopped taking her prescribed antidepressant, was having difficulty sleeping, and was crying more frequently. The experts described Jacqueline’s call as a cry for help from a person in crisis mode.
Both experts also testified that Dr. Chi-rillo’s failure to see Jacqueline caused her death because Dr. durillo would have been able to discern that she had suicidal ideations and would have intervened. Both experts believed that, based on Dr. Chirillo’s relationship with Jacqueline, she would have been honest with him about her suicidal ideations. Dr. Yaffe explained that suicidal patients who are confronted directly by their healthcare providers are more likely than not to confess those symptoms.
The trial court granted final summary judgment against Granicz based on its finding that, as a matter of law, Dr. durillo did not owe a duty to prevent the unforeseeable suicide of an outpatient. We review this ruling de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000); Estate of Rotell ex rel. Rotell v. Kuehnle, 38 So.3d 783, 785 (Fla. 2d DCA 2010).
The Florida Supreme Court has discussed the trial court’s role in assessing foreseeability in the context of determining the issue of duty. See McCain v. Fla. Power Corp., 593 So.2d 500, 502-04 (Fla.1992). “The duty element of negligence focuses on whether the defendant’s conduct foreseeably created a broader ‘zone of risk’ that poses a general threat of harm to others.” Id. at 502. This concept is not to be confused with the proximate cause ele *548 ment of negligence which focuses on “whether and to what extent the defendant’s conduct foreseeably and substantially caused the specific injury that actually occurred.” Id. The duty element is a question of law for the court to resolve; the element of proximate cause presents a fact question for the jury.
By focusing on whether Jacqueline’s suicide was foreseeable, the trial court analyzed Dr. Chirillo’s duty under the standard for proximate cause. The proper inquiry that the court should have made to determine the legal issue of duty “is whether the defendant’s conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred.” McCain, 593 So.2d at 504.
In Florida, physicians are under “a duty to ‘use the ordinary skills, means and methods that are recognized as necessary and which are customarily followed in the particular type of case according tb the standard of those who are qualified by training and experience to perform similar services.’” Sweet v. Sheehan, 932 So.2d 365, 368 (Fla. 2d DCA 2006) (quoting Brooks v. Serrano, 209 So.2d 279, 280 (Fla. 4th DCA 1968)).
The prevailing standard of care for a physician in Florida is “ ‘that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.’ ” Sweet, 932 So.2d at 368 (quoting § 766.102(1), Fla. Stat. (2004)); see also Perez v. United States, 883 F.Supp.2d 1257, 1284 (S.D.Fla.2012); Estate of Rotell, 38 So.3d at 789. The specific aspects of this duty depend partially on the extent or duration of the provider/patient relationship.[2] Perez, 883 F.Supp.2d at 1296. This issue is generally resolved in medical malpractice cases by expert testimony. Perez, 883 F.Supp.2d at 1285; Sweet, 932 So.2d at 368.
In this case, Granicz provided expert testimony regarding the standard of care for a primary care physician when a patient being treated for depression calls the office and complains of symptoms that suggest worsening depression. According to this testimony, the standard of care requires physicians to personally assess the patient’s condition to determine if she is having thoughts of suicide and to intervene if necessary. This evidence is sufficient to establish that Dr. Chirillo owed a legal duty to Jacqueline that precluded summary judgment.
We recognize that our decision appears to conflict with that of the First District in Lawlor v. Orlando, 795 So.2d 147 (Fla. 1st DCA 2001). Lawlor involved an appeal from a final summary judgment in which the trial court ruled that a psychotherapist did not have a duty toward an outpatient who committed suicide. Id. at 147. As did the trial court in this case, the First District determined that the psychotherapist did not have a legal duty to prevent the patient’s suicide because the suicide was unforeseeable. Id. at 148. And the appellate court rejected the plaintiffs expert testimony setting forth the applicable standard of care, how it was breached, and how the breach proximately caused the patient’s suicide. Id. at 149-50 (in dissent).
For the reasons set forth above, we disagree with the Lawlor court’s description of the psychotherapist’s legal duty as a duty to prevent the patient’s suicide. *549 Instead, we agree with Judge Benton’s observations in the dissent that the psychotherapist had a “duty to provide ‘appropriate psychotherapy' ” and that the plaintiffs expert affidavit precluded summary judgment. See id. at 150. Judge Benton correctly noted that because a legal duty existed, the issue of whether the doctor’s actions proximately caused the plaintiffs suicide was to be resolved by a jury. Id. at 151. Similarly in this case, based on the record evidence, a jury question remains as to the proximate cause issue.
In conclusion, the expert testimony established that Dr. Chirillo had a duty to treat Jacqueline in accordance with the prevailing standard of care for a primary care physician treating a patient for depression, precluding summary judgment on this issue. Accordingly, we reverse the order granting final summary judgment and remand for further proceedings. We also certify conflict with the First District’s decision in Lawlor.
Reversed and remanded; conflict certified.
NORTHCUTT and CRENSHAW, JJ., Concur.

. The trial court did not rule on this argument, and Defendants raise it as an alternative basis for affirmance on appeal. We reject this argument because the rule against the stacking of inferences does not apply to expert testimony that is based on reasonable inferences that can be drawn from the evidence. See Zack v. Centro Español Hosp., Inc., 319 So.2d 34, 35-36 (Fla. 2d DCA 1975).

. For example, a provider/patient relationship of only a short duration, or treatment for a medical issue that does not have any psychiatric aspects, might not be sufficient for the provider to have a duty to provide appropriate psychiatric treatment. Perez, 883 F.Supp.2d at 1297.