# Supreme Court of Florida

_____

No. SC14-898
_____

**JOSEPH S. CHIRILLO, JR., M.D., et al.,**
Petitioners,

vs.

**ROBERT GRANICZ, etc.,**
Respondent.

[August 25, 2016]

QUINCE, J.

This case is before the Court for review of the decision of the Second District Court of Appeal in Granicz v. Chirillo, 147 So. 3d 544 (Fla. 2d DCA 2014). The district court certified that its decision is in direct conflict with the decision of the First District Court of Appeal in Lawlor v. Orlando, 795 So. 2d 147 (Fla. 1st DCA 2001), on the issue of the duty owed to a patient by a physician or psychotherapist. Granicz, 147 So. 3d at 549. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we approve the Second District's decision and disapprove that of the First District.

## FACTS

This case involves a medical malpractice action filed by Robert Granicz ("Granicz") as personal representative of his wife's estate, asserting that her primary care physician, Dr. Joseph S. Chirillo, Jr., breached his duty of care in treating her, which resulted in her suicide. Granicz, 147 So. 3d at 546. Granicz's wife, Jacqueline Granicz ("the decedent"), had a history of depression. Id. She began seeing Dr. Chirillo in 2005, and in September of that year, Dr. Chirillo switched her medication from Prozac to another antidepressant known as Effexor. Id.

On October 8, 2008, the decedent called Dr. Chirillo's office and told his medical assistant that she had stopped taking the Effexor because she thought it was causing her to experience some side effects, such as not sleeping well and having to take more sleeping pills, being under mental strain and crying easily, and having gastrointestinal problems. Id. The decedent also explained that she had not "felt right" since late June or July. Id. "The [medical] assistant wrote this information in a note for Dr. Chirillo." Id. Upon reading the note shortly thereafter, Dr. Chirillo changed the decedent's antidepressant to Lexapro and referred her to a gastroenterologist. Id. Dr. Chirillo's office called the decedent and told her that she could pick up samples and a prescription for Lexapro, but the

office did not request that she schedule an appointment with Dr. Chirillo. Id. The decedent picked up the items later that day. Id.

The next day, Granicz found the decedent's body hanging in their garage. Id. The decedent did not leave a note. Id. Granicz and one of the couple's adult daughters, Renee Granicz ("Renee"), were both shocked because the decedent had not given them any indication that she might be suicidal. Id. Renee had spoken to the decedent two days before the suicide. Id. The decedent had mentioned not feeling well, crying easily, and her stomach hurting, and when Renee told her to call her doctor, the decedent agreed that she would call. Granicz had seen the decedent just hours before her suicide, as he was leaving home and she was returning home. She mentioned not feeling well, but to Granicz, it appeared that her distress was mostly physical rather than emotional.

Granicz filed this medical malpractice action, naming Dr. Chirillo; Joseph S. Chirillo, M.D., P.A.; and Millennium Physician Group, LLC, as defendants (collectively, "Petitioners"). Id. Granicz asserted that Dr. Chirillo had breached his duty of care in treating the decedent and that her suicide had resulted from that breach. Id. Prior to trial, Petitioners filed a motion for summary judgment against Granicz, arguing in relevant part that Dr. Chirillo owed no duty to prevent the decedent from committing an unforeseeable suicide while she was not in his control. Id. at 547. The trial court granted the motion, finding that Dr. Chirillo did

not have a legal duty to prevent Jacqueline's suicide.  Id. at 546.  Granicz appealed, arguing "that the court improperly characterized Dr. Chirillo's duty as a duty to prevent Jacqueline's suicide."  Id.  Granicz asserted that Dr. Chirillo's duty instead was to exercise reasonable care in his treatment of the decedent and summary judgment was improper because Granicz had provided expert testimony setting forth the applicable standard of care, how it was breached, and how the breach was the proximate cause of the decedent's suicide.  Id.  The Second District agreed with Granicz and reversed, certifying conflict with Lawlor.  Id. at 546, 549. Petitioners now appeal, arguing that Dr. Chirillo had no duty to prevent the decedent's suicide.

**ANALYSIS**

Petitioners first argue that the Second District erred in rejecting Florida case law that refuses to extend a physician's duty to prevent a mentally ill patient's suicide to a non-custodial relationship.  The determination of duty, as an element of negligence, is a question of law, McCain v. Florida Power Corp., 593 So. 2d 500, 502 (Fla. 1992), and is therefore subject to de novo review, Estate of Rotell ex rel. Rotell v. Kuehnle, 38 So. 3d 783, 785 (Fla. 2d DCA 2010).  We also review de novo a trial court's granting of summary judgment.  Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

Our opinion in McCain is "the starting point for any duty analysis under Florida's negligence law." United States v. Stevens, 994 So. 2d 1062, 1066 n.2 (Fla. 2008). In McCain, we recognized that foreseeability is relevant to the elements of both duty and proximate cause. 593 So. 2d at 502. Under duty, the question is "whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." Id. On the other hand, proximate cause asks "whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." Id. Duty is determined as a matter of law and is the tool used by the jury to assess the defendant's behavior, whereas proximate cause is a fact-specific assessment by the jury to determine whether the exact injury is likely to recur if the defendant's same conduct is repeated in a similar context. Id. at 503. Although a duty analysis considers some general facts of the case, it does so only to determine whether a general, foreseeable zone of risk was created, without delving into the specific injury that occurred or whether such injury was foreseeable. Id. at 502 n.1, 504.

In this case, the trial court granted summary judgment because it found that Dr. Chirillo did not have a duty to prevent the unforeseeable suicide of the outpatient decedent. Granicz, 147 So. 3d at 546. Relying on Florida case law and section 766.102(1), Florida Statutes (2008), the Second District reversed, agreeing with Granicz that the trial court improperly characterized the duty Dr. Chirillo

owed to the decedent. Id. at 546, 548. The district court instead framed Dr.

Chirillo's duty as "a duty to 'use the ordinary skills, means and methods that are

recognized as necessary and which are customarily followed in the particular type

of case according to the standard of those who are qualified by training and

experience to perform similar services.' " Id. at 548 (quoting Sweet v. Sheehan,

932 So. 2d 365, 368 (Fla. 2d DCA 2006)). The court then defined the applicable

"standard" for the medical profession as " 'that level of care, skill, and treatment

which, in light of all relevant surrounding circumstances, is recognized as

acceptable and appropriate by reasonably prudent similar health care providers.' "

Id. (quoting Sweet, 932 So. 2d at 368); see also § 766.102(1), Fla. Stat. (2008).

After detailing what it determined was the proper method for assessing duty, the

Second District found that Granicz had provided sufficient expert testimony

regarding the standard of care to establish that Dr. Chirillo owed the decedent a

general, legal duty—not a duty to prevent her suicide—thereby precluding

summary judgment. Id. The court also found that based on the evidence, a jury

question still remained as to proximate cause. Id.

In Lawlor, the conflict case, the trial court granted summary judgment

because the suicide of a former patient was not sufficiently foreseeable to impose a

duty on the defendant psychotherapist. 795 So. 2d at 147. The First District

affirmed, finding no legal duty for two reasons: the unforeseeability of the suicide

and the decedent's status as an outpatient.  Id. at 148.  First, the district court framed the issue as "whether a psychotherapist owes a legal duty to an outpatient client who commits suicide."  Id. at 147.  The court noted that Florida law already imposes a duty in a custodial setting to protect a patient from harming himself but found that no Florida cases had extended that duty to outpatients.  Id. at 148.  The court then outlined the McCain standard for determining duty as follows:

> [T]he issue of duty is a question of law to be determined by the trial court as a "minimum threshold legal requirement for opening the courthouse doors" before the "more specific factual requirement" to prove causation can go to the trier of fact.  In determining the threshold issue of legal duty, a trial court is required to examine the factual allegations which go to the question of whether a duty was foreseeable.  Facts to support foreseeability can be relevant to both the element of duty and the element of proximate causation.  The necessary examination of facts, which the supreme court recognizes may be essential in determining whether or not a legal duty exists, does not make any part of the duty analysis a jury question.
> . . . While there is a foreseeability analysis that would be performed by the trier of fact in regard to proximate causation, the duty analysis of the trial court must result in a finding of duty as a matter of law before the issue of proximate causation becomes relevant.

Id. (internal citations omitted).  Having cited the standard, the First District found that the trial court "correctly considered all the factual allegations in performing the foreseeability analysis as to the duty element."  Id.  The district court reviewed the record and highlighted the lack of evidence of a risk of suicide, concluding that evidence of the decedent's depression and "other risk factors" does not necessarily

create a "foreseeable zone of risk for imposing a legal duty on [the decedent's] psychotherapist." Id.

The conflict issue here concerns the proper determination of a physician's duty to a patient who commits suicide. The Second District used the statutorily delineated duty—and standard of care—to identify the physician's duty as a general duty to treat the patient in accordance with the prevailing standard of care in the medical field. Granicz, 147 So. 3d at 548. Whereas, the First District described the duty as a duty to protect a patient from harming himself or as a duty of custodial supervision and care. Lawlor, 795 So. 2d at 147-48. While both district courts cited the same controlling law from McCain, they applied it in different ways, creating apparent conflict.[1] Importantly, the characterization of the duty determines the outcome of each case, as both were decided on a motion for summary judgment. The reason for this apparent conflict is that a duty can arise from a variety of sources. McCain, 593 So. 2d at 503 n.2.

In McCain, we described four sources of duty: statutes, judicial interpretations of statutes, other judicial precedent, and the general facts of the case. Id. We clarified that the requirement of determining a foreseeable zone of

---

1. Harry Lee Anstead et al., The Operation and Jurisdiction of the Supreme Court of Florida, 29 Nova L. Rev. 431, 520 (2005) (describing apparent conflict as "when a district court opinion only seems to be in conflict, even though there actually may be some reasonable way to reconcile it with the case law").

risk related to the last category—cases in which a duty arises from the general facts of the case.  Id.  Therefore, where a duty is derived from statutes, the determination of duty under McCain would appear to be inapplicable.  Because the Second District in the instant case delineated a statutory duty, and the First District in Lawlor looked for the creation of a foreseeable zone of risk under McCain, the conflict cases are, in fact, distinguishable on that basis.  However, the cases are still in conflict as to another issue: the proper analysis of foreseeability under McCain.

In Granicz, the Second District stated that by focusing on whether the decedent's suicide was foreseeable, the trial court erroneously analyzed Dr. Chirillo's duty under the element of proximate cause.  147 So. 3d at 548.  The district court quoted McCain to clarify that the proper inquiry for determining duty " 'is whether the defendant's conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred.' "  Id. at 548 (quoting McCain, 593 So. 2d at 504).  Although the trial court in Lawlor also focused on whether the suicide was foreseeable, the First District in that case found such focus to be a proper determination of duty under McCain and affirmed the denial of summary judgment on that and one other basis.  Lawlor, 795 So. 2d at 148.

Petitioners argue that the trial court's and Lawlor's focus on the foreseeability of the suicide was properly conducted under the duty element because in both cases, the courts were determining whether the psychotherapist owed a duty to prevent suicide. Therefore, suicide was the risk, the foreseeability of which the district court had to determine under McCain's "foreseeable zone of risk" formulation. Petitioners assert that the Second District's application of section 766.102(1)'s standard of care was incorrect because there is a difference between an action in general medical malpractice (to which section 766.102 would apply) and one for a duty to prevent suicide (for which foreseeability of the suicide is the relevant consideration). See Winger v. Franciscan Med. Ctr., 701 N.E.2d 813, 818 (Ill. App. Ct. 1998) (recognizing that action for failure to properly supervise a suicidal patient or protect such patient from inflicting self-harm is different from an action for general medical malpractice in diagnosis or treatment). In the alternative, Petitioners argue that because there is no duty to prevent suicide in an outpatient situation, the trial court's (and Lawlor's) finding of no legal duty is still correct. Both of these arguments, however, are misguided, and we reject them in favor of the Second District's analysis in Granicz.

Petitioners are correct that Florida law has not extended the duty to prevent suicide to an outpatient scenario, but such fact only highlights why Petitioners' attempt to classify the duty in the instant case as a duty to prevent suicide is

- 10 -

incorrect and inappropriate. The decedent in this case was an outpatient of Dr.

Chirillo's. Therefore, under Florida law, there was no duty to prevent her suicide.

Paddock v. Chacko, 522 So. 2d 410, 415-17 (Fla. 5th DCA 1988). However, the

nonexistence of one specific type of duty does not mean that Dr. Chirillo owed the

decedent no duty at all.[2] As we plainly stated in McCain, there are several sources

of duty. Although the inpatient duty to prevent suicide does not apply here, there

still existed a statutory duty under section 766.102 to treat the decedent in

accordance with the standard of care. We find that the Second District properly

evaluated the instant case based on the statutory duty owed to the decedent and

also properly classified the foreseeability of the decedent's suicide as a matter of

fact for the jury to decide in determining proximate cause. As such, we approve

the Second District's decision in this case.

We disapprove Lawlor on two grounds: (1) the First District evaluated that

case under a duty it had already determined did not apply to outpatient scenarios—

the duty to prevent suicide—and (2) the First District should have assessed the

---

2. Perez v. United States, 883 F. Supp. 2d 1257, 1286 & n.90 (S.D. Fla. 2012) (finding that it would be peculiar and contrary to the intent of Florida law "to absolve a treating psychiatrist of liability for all negligent acts simply because the patient is being seen on an outpatient basis" and citing Sweet, 932 So. 2d at 365, for the proposition that "[t]he outpatient status of a person being treated for severe mental illness clearly does not, as a matter of law, completely absolve a psychiatrist or mental health provider from the duty to render an appropriate diagnosis, treatment, and care").

foreseeability of the decedent's specific injury (suicide) as part of a proximate cause analysis, granting summary judgment on that ground only if the evidence was undisputed that the suicide was not foreseeable. See McCain, 593 So. 2d at 504 ("The judge is free to take this matter [(the determination of proximate cause)] from the fact-finder only where the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference.").

Petitioners also argue that the Second District erred in deferring to the opinions of Granicz's experts regarding the standard of care without conducting its own independent analysis of the foreseeability of the decedent's suicide. However, this statement is erroneous in two ways, both of which stem from Petitioners' error as to the first claim, the error of classifying the duty in this case as a duty to prevent suicide. As discussed above, the foreseeability of the decedent's suicide is relevant to the proximate cause analysis, not the determination of duty. Further, as to the Second District's reliance on expert testimony, this Court has found such reliance to be proper in medical malpractice cases. Pate v. Threlkel, 661 So. 2d 278, 281 (Fla. 1995) ("In medical malpractice cases, the standard of care is determined by a consideration of expert testimony."); see also Perez, 883 F. Supp. 2d at 1286 & n.90 ("Courts rely primarily on expert testimony when determining the applicable standard of care."); Brooks v. Serrano, 209 So. 2d 279, 280 (Fla. 4th DCA 1968) ("To determine what skills, means and methods are recognized as

- 12 -

necessary and customarily followed in the community with respect to any given case normally requires expert testimony, except where the duty and its breach are so obvious as to be apparent to persons of common experience."). Therefore, we find that the Second District was correct to look to the depositions of the experts—filed with the motion for summary judgment—to determine the applicable standard of care. Because Petitioners' argument regarding suicidal ideations is related to the foreseeability of the decedent's suicide, those arguments are more cognizable as reasons for granting summary judgment on grounds of an undisputed lack of proximate cause.

Although erroneously considered by the trial court as part of the duty determination, the issue of the foreseeability of the suicide was presented by Petitioners to both the trial and appellate courts. The trial court found the decedent's suicide unforeseeable, while the Second District determined that a jury question remained as to the issue, thus precluding summary judgment. Granicz, 147 So. 3d at 547, 549. Because a motion for summary judgment requires a court to determine whether the movant is entitled to judgment as a matter of law, this Court reviews the granting of such a motion de novo. Aberdeen at Ormond Beach, L.P., 760 So. 2d at 130.

It is possible for a defendant to owe a legal duty of care to a specific plaintiff yet not be liable to that plaintiff because proximate causation cannot be proven.

<u>McCain</u>, 593 So. 2d at 502-03. In that context, summary judgment is proper where "the evidence supports no more than a single reasonable inference" as to proximate cause, <u>id.</u> at 504, or where there are no genuine issues of material fact as to proximate cause, <u>Brooks</u>, 209 So. 2d at 280. If reasonable persons can disagree as to whether the facts establish proximate cause, summary judgment is not proper and the issue is for the jury to decide. <u>McCain</u>, 593 So. 2d at 504.

Here, the trial court in its order and Petitioners in their initial brief outlined testimony from the hearing on the motion for summary judgment which tended to show that the decedent's suicide was not foreseeable. However, Granicz pointed out that Dr. Chirillo (1) knew that patients who stopped taking Effexor abruptly had an increased risk of suicide and (2) ultimately opined that stopping Effexor was "a contributing factor" in the decedent's suicide. On this evidence, we approve the Second District's finding that there is a genuine issue of material fact remaining as to proximate cause and therefore, summary judgment should not have been granted.

## CONCLUSION

For the reasons herein expressed, we approve the Second District's decision, reversing and remanding the case to the trial court with instructions to proceed to trial. We disapprove the decision of the First District in <u>Lawlor</u> as an improper determination of duty.

- 14 -

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and PERRY, JJ., concur.
CANADY and POLSTON, JJ., concur in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified
Direct Conflict of Decisions

  Second District - Case No. 2D12-5244

  (Sarasota County)

Daniel Marc Schwarz and Scott Allan Cole of Cole Scott & Kissane, P.A., Miami,
Florida,

  for Petitioners

James B. Tilghman, Jr. and Gary Devenow Fox of Stewart Tilghman Fox Bianchi
& Cain, P.A., Miami, Florida,

  for Respondent