SCHEB, Acting Chief Judge.
Barbara L. Moisan, plaintiff below, challenges the entry of a directed verdict in favor of defendant, Dr. Frank K. Kriz, Jr., in a medical malpractice action. We affirm on the issue of informed consent and reverse on the issue of negligence.
In July 1981, Mrs. Moisan consulted Dr. Kriz, an orthopedic surgeon, for treatment of pain, swelling, and other problems in her right knee. Dr. Kriz recommended surgery known as a high tibial lateral closing wedge osteotomy, which he performed in January 1982. Subsequently, Mrs. Moisan developed a drop foot and consulted Dr. Roberto H. Barja, another orthopedic physician.
In her amended complaint, Mrs. Moisan alleged that Dr. Kriz was negligent in that he failed to locate, identify, and prevent trauma to the common peroneal nerve during the osteotomy. Mrs. Moisan claimed that she acquired a permanent drop foot as a result of Dr. Kriz’s alleged negligence in *399 traumatizing the nerve. She further alleged that Dr. Kriz was negligent in failing to diagnose and treat her drop foot and that his action in obtaining her consent to perform the surgery was not in accordance with accepted standards of medical practice.
The case proceeded to trial by jury. In addition to her testimony, Mrs. Moisan offered the deposition testimony of two orthopedic surgeons, Dr. Barja, the treating physician, and Dr. Everett J. Gordon. At the conclusion of Mrs. Moisan’s case, Dr. Kriz moved for a directed verdict claiming that the evidence before the court did not establish that he had been negligent or that he had failed to obtain Mrs. Moisan’s informed consent authorizing the surgery. The trial court granted the motion on both issues “without editorializing” and subsequently entered a final judgment in favor of Dr. Kriz. This appeal followed.
We preface our discussion by briefly outlining the principles of law governing medical malpractice suits, directed verdicts, and the applicable standard of appellate review in these cases. To prevail in a medical malpractice action, a plaintiff must identify the standard of care owed by the physician, produce evidence that the physician breached the duty to render medical care in accordance with the requisite standard of care, and establish that the breach proximately caused the injury alleged. Gooding v. University Hosp. Bldg., 445 So.2d 1015 (Fla.1984). Generally, expert testimony is required to establish the standard of care prevalent in a particular medical field. Thus, from a professional standpoint, the services rendered by a physician are scrutinized by other physicians in order to determine whether there was a failure to adhere to the requisite standard of care.
A motion for directed verdict is available during a trial to test the legal sufficiency of the evidence. Tiny’s Liquors, Inc. v. Davis, 353 So.2d 168 (Fla. 3d DCA 1977). The motion must be viewed as one that admits the truth of all facts in evidence and every reasonable conclusion or inference based thereon which is favorable to the non-moving party. Hartnett v. Fowler, 94 So.2d 724 (Fla.1957). Thus, when a defendant moves for a directed verdict, the trial judge must evaluate the evidence in the light most favorable to and resolve any doubt in favor of the plaintiff. Reinhart v. Seaboard Coast Line R.R., 422 So.2d 41 (Fla. 2d DCA 1982). In ruling on the motion, the trial court may not weigh the evidence or assess a witness’s credibility and must deny the motion if the evidence is conflicting or if different conclusions and inferences can be drawn from it. Maas Bros., Inc. v. Bishop, 204 So.2d 16 (Fla. 2d DCA 1967); Maximo Moorings Marine Center, Inc. v. Walke, 196 So.2d 215 (Fla. 2d DCA 1967). Thus, where as here, a trial court enters a directed verdict, it implicitly holds that there is a lack of evidence to support one side of the case. Black v. Heninger, 163 So.2d 3 (Fla. 2d DCA 1964). On appeal, a reviewing court must consider whether the trial court abused its discretion in deciding there was no evidence on which a jury could lawfully return a verdict in favor of the plaintiff. Myers v. Atlantic Coast Line R.R. Co., 112 So.2d 263 (Fla.1959).
In the instant case, Dr. Barja and Dr. Gordon recognized that Mrs. Moisan suffers from a condition known as drop foot. The doctors appear to agree that a permanent drop foot is the result of a deviation from the standard of care exercised by reasonable physicians performing surgery in the vicinity of the common pero-neal nerve. The experts, however, dispute whether the injury suffered by Mrs. Moi-san was of a permanent or temporary nature.
When asked whether Mrs. Moisan has a permanent peroneal injury from presently available information, Dr. Gordon replied, “Yes, sir.” In his opinion, recovery from a temporary injury would have occurred within a few weeks of the operation, and he explained that temporary injury may result from an incorrect position of the patient on the operating table, a tight cast, or too much traction by the doctor’s assistant. He added that Mrs. Moisan’s permanent injury resulted from a cut or damage to the *400 nerve caused by direct contact with an instrument utilized by Dr. Kriz. Dr. Gordon identified several opportunities for Dr. Kriz to have partially cut the nerve, i.e., when he rongeured away a portion of the head of the fibula, when he dissected using the scalpel, or when he introduced the knife or osteotome. Dr. Gordon was not sure of exactly how the “cut” was made since he was not present at the operation.
On the other hand, Dr. Barja opined that Mrs. Moisan’s injury is temporary since she has displayed noticeable improvement since her surgery in January 1982 and there is another surgical procedure which can solve the problem. When he first examined Mrs. Moisan, she rated zero on a muscles graded scale (0-5), has now progressed to a three, and will recover to a four within a year or two. Dr. Barja testified that he operated on Mrs. Moisan after Dr. Kriz and personally inspected the nerve at that time. He stated that the nerve was not cut and implied that he did not think Dr. Kriz’s services deviated from the requisite standard of care. However, Dr. Barja would not commit himself to an assessment of whether permanent injury has occurred until five years elapses from the date of Mrs. Moi-san’s surgery.
As we indicated above, it is not the trial court’s function to weigh the credibility of a witness but rather to determine whether, when viewed in a light most favorable to Mrs. Moisan, the expert testimony established a material issue of fact from which a jury could form different reasonable conclusions regarding Dr. Kriz’s negligence. The testimony indicated that if Mrs. Moi-san’s drop foot was permanent, Dr. Kriz’s performance of the surgery was a deviation from the standard of care which must be exercised by reasonable physicians. In view of the conflict in testimony between the experts regarding whether the injury was of a permanent or temporary nature, we believe the evidence before the trial judge was such that a jury could lawfully return a verdict in favor of Mrs. Moisan. Therefore, the trial court erred when it granted a directed verdict in favor of Dr. Kriz on the negligence issue.
We have also examined the evidence on the issue of whether Mrs. Moisan consented to the surgery and conclude that even when viewed in a light most favorable to Mrs. Moisan, the evidence failed to establish a prima facie case that she did not give an informed consent to her surgery.
Accordingly, we vacate the directed verdict and remand to the trial court for further proceedings in accordance with this opinion.
DANAHY and THREADGILL, JJ., concur.