710 So.2d 197 (1998)
Thomas G. COMERFORD, Appellant,
v.
SUNSHINE NETWORK, etc., et al., Appellees.
No. 97-481.
District Court of Appeal of Florida, Fifth District.
May 1, 1998.
Debra Steinberg Nelson, of Broussard, Condry, Morgan & Nelson, Orlando, for Appellant.
Terry L. McCollough, of Terry L. McCollough, P.A., Orlando, for Appellees.
*198 PER CURIAM.
Thomas G. Comerford ["Comerford"] filed an action below to recover commissions he claims were owed to him by his former employer, Sunshine Network ["Sunshine"]. The lower court granted a summary final judgment in favor of Sunshine. We reverse.
Comerford was employed as director of sales for Sunshine from March 2, 1989 through March 17, 1993. He filed suit on July 1, 1993. The complaint alleged that Sunshine had agreed to pay Comerford an annual base salary, plus a 3% commission on all net sales and a 1% commission on trade, the latter two "payable on a monthly basis." A good deal of ink has been expended, and the energy of the lower court and this court directed to the question whether the record shows without dispute what Comerford's employment agreement consisted of. At oral argument, it was agreed that Comerford's "employment agreement" (whatever it may have consisted of) was silent on the issue of entitlement to commissions after termination of employment.[1]
The general rule is that an employee is entitled to commissions collected posttermination, provided those commissions were "earned" during his employment. Cornell Computer Corp. v. Damion, 530 So.2d 497 (Fla. 3d DCA 1988). The fact that an employment contract is silent on the issue is not fatal to a claim to post-termination commissions. Only where the contract expressly provides for forfeiture of an "earned" commission does forfeiture occur. Id. Moreover, if a contract is silent not only on post-termination rights, but on the right of accrual, then commissions are generally deemed "earned" when a sale is made, although the goods or services are delivered after his termination.[2]
There are at least three exceptions to this general rule. The first is where the contract of employment expressly provides that the right to commissions ceases upon an employee's termination. Cornell, supra. See, e.g., Willis v. Champlain Cable Corp., 109 Wash.2d 747, 748 P.2d 621 (1988).
A second exception involves employment contracts which require the performance of "services as an entirety." Cornell, supra. This appears to involve cases in which an employee is required not only to make sales as part of his employment, but is also required to service that business as a condition of the right to a commission. Cueto v. John Allmand Boats, Inc., 334 So.2d 30 (Fla. 3d DCA), cert. denied, 341 So.2d 290 (Fla.1976). See also E.H. Crump, Inc. v. Aikin, 571 So.2d 1353 (Fla. 2d DCA 1990); cf. AV-MED, Inc. v. French, 458 So.2d 67 (Fla. 3d DCA 1984); Oak Agency, Inc. v. Warrantech Dealer Based Services, Inc., No. 91-C-6677, 1992 WL 201989 (N.D.Ill. Aug.14, 1992).
A third exception involves a recognized custom in the trade, business or industry that the right to be paid a commission terminates with the employment. Cornell, supra. In these situations, industry custom appears admissible to explain an agreement to pay commissions, but it cannot be used to override the express terms of the parties' contract.
Sunshine relies on the affidavit of David Almstead, its general manager during Comerford's employment. In his affidavit, he stated that (1) he had never known of any instance in which anyone in the broadcast industry had been paid commissions following termination; and (2) there is no policy or practice in the television advertising industry to pay salesmen post-termination commissions for contracts put in place during their employment. Similarly, during his deposition, Almstead represented that the policy of the television industry is to pay commissions only through termination. However, Almstead *199 also denied knowledge of the policy of any company other than Sunshine. Concerning Sunshine, Almstead testified that the company's policy was to pay commissions only through termination, but he was unable to recall whether any other commissioned salesmen had been terminated by Sunshine before Comerford and, if so, what had happened upon termination. These statements fail to demonstrate that Sunshine had an actual "policy" not to pay commissions after termination or that industry custom was not to pay commissions after termination.
The evidence before the court on the question of industry custom and practice favors Comerford. Almstead asserts in his affidavit that:
At no time during the time period either prior to or during Mr. Comerford's employment was there any agreement between Sunshine Network and Thomas Comerford whereby he would be entitled to receive compensation of any form or amount following the termination, either voluntarily or involuntarily, of his employment.
but he then denies knowing the custom or practice of any other company. On the other hand, paragraph 5 of the affidavit of Comerford's expert, filed in opposition to the motion for summary judgment, sets forth:
I have been personally involved in the television/cable network advertising, sales and syndication business since 1971. That I have personal experience with compensation of employees in the broadcast, cable and syndication business. That it is the standard practice in the broadcast, cable and syndication business for advertising sales managers and advertising sales persons to be paid commissions, after termination of their employment, for contracts put in place during their employment, for the term of each subject contract. In other words, advertising sales managers and advertising sales persons are paid the "fruits of their labor" during the entire term of the contracts in place at the time of their termination.
We agree with Sunshine that where the company has an established policy communicated to its employees precluding posttermination payment of commissions, custom and practice do not control. The company policy effectively becomes an implied term of the employment relationship. Whether such a policy existed at Sunshine has not been established without dispute, however. Sunshine was a new company when Comerford was hired and the record does not even disclose whether Sunshine had ever previously discharged a commissioned employee before Comerford. Summary judgment may ultimately be appropriate in this case, but it is premature at this time.
REVERSED and REMANDED.
GRIFFIN, C.J., and W. SHARP and HARRIS, JJ., concur.
NOTES
[1] It is less clear whether the various documents that may evidence the agreement have evidentiary value concerning the entitlement issue.
[2] See 3 C.J.S. Agency § 187, p. 88 ("Accordingly, an agent selling goods on commission is entitled to a commission on goods sold by him during the continuance of the agency, although the goods were not delivered or paid for, or even where the orders were not received by the principal, until after the termination of the relationship."); Abbott v. Tec-Mill & Supply, Inc., 178 So.2d 881 (Fla. 3d DCA 1965); Lenchitsky v. H.J. Sandberg Co., 217 Or. 483, 343 P.2d 523 (1959); Leen v. Butter Co., 177 Wis.2d 150, 501 N.W.2d 847 (App.), review denied, 505 N.W.2d 138 (Wis. 1993).