[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-10826
_____

D. C. Docket No. 03-60085 CV-UUB

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
APRIL 19, 2005
THOMAS K. KAHN
CLERK

DAVID GLICKMAN,

                                Plaintiff-Counter Defendant-
                                Appellant
                                Cross-Appellee,

versus

SEARS, ROEBUCK AND CO.,

                                Defendant-Counter Claimant,
                                Appellee
                                Cross-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

( April 19, 2005 )

Before CARNES and COX, Circuit Judges, and STROM[*], District Judge.

PER CURIAM:

David Glickman appeals the district court's order granting summary judgment to his former employer, Sears, Roebuck & Co. ("Sears"). Sears appeals the district court's order granting summary judgment for Glickman on Sears's counterclaim. We affirm.

## I. BACKGROUND

Florida Builders Association ("FBA") sells appliances to developers of high rise condominiums and builders of single family homes in South Florida. Glickman was employed by FBA as a salesman from about 1984 to April 2002. In February 1997, soon after Sears acquired FBA, Sears and Glickman entered into a written agreement (the "Agreement"), under which FBA agreed to pay Glickman the sum of $50,000 and, in exchange, Glickman agreed: (1) to remain employed by FBA for at least one year following the acquisition by Sears; and (2) not to compete with FBA or solicit its employees for a period of one year following his last day of active employment with the company. (R.2-74 at 28, 33-40 and Ex. 1.)

The compensation for FBA salesmen, including Glickman, consisted of a base

---

[*]Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

salary and sales commissions. Sears contends that it was the long-standing practice of FBA not to pay commissions for products delivered to customers after an employee's termination. In August of 2000, this practice was explicitly set forth in FBA's Sales and Marketing Bulletin No. 3 (the "Bulletin"), which provides:

> In the event a Sales Associate leaves FBA for any reason, they will be paid commissions and spiffs for all sales delivered up to and including their last day worked.

(R.2-75 at at Ex. 3.) Glickman received a copy of the Bulletin and was present at the sales meeting where the policy was discussed.

In February 2002, Glickman was placed on administrative leave of absence for violating FBA's ethics policies. Specifically, Glickman was alleged to have borrowed money from FBA's suppliers, customers, and vendors. After his termination, Glickman joined another company, Appliance Florida, LLC. Sears contends that Appliance Florida is a competitor of FBA and that Glickman solicited FBA employees in violation of the Agreement.

Glickman filed suit against Sears, alleging that he is entitled to commissions on appliances sold while he was an employee of FBA, but that were delivered after his termination. Sears counterclaimed, alleging that Glickman had breached the Agreement, and seeking return of the $50,000 stay bonus paid to Glickman and lost profits. The district court granted Sears summary judgment on Glickman's claim, and

3

granted Glickman summary judgment on Sears's counterclaim. This appeal followed.

## II. DISCUSSION

Glickman argues that the district court erred in granting Sears summary judgment because there was a genuine issue of material fact as to whether Sears had a policy of requiring goods to be delivered before commissions were credited to a salesman. Glickman contends that under Florida law he earned commissions at the time of sale, rather than at the time of delivery. Glickman correctly identifies the controlling Florida law. Under *Comerford v. Sunshine Network*, 710 So. 2d 197 (Fla. Dist. Ct. App. 1998), "an employee is entitled to commissions collected post-termination, provided those commissions were 'earned' during his employment." *Id*. at 198. Furthermore, "if a contract is silent not only on post-termination rights, but on the right of accrual, the commissions are generally deemed 'earned' when a sale is made, although the goods are delivered after his termination." *Id*. But, there are exceptions to the *Comerford* rule, including where there is a recognized business custom providing otherwise. *Id*.

Two Sears executives testified that the company had an established practice of not crediting a salesman with commission until delivery. Larry Lewis, President of FBA, testified that "[t]he sales are not completed until they are delivered. . . . The

4

date of delivery is the driving force between our accounting department and the payment of commissions." (R.2-75 at 139.) Vice President John Wilkens also testified that commissions were earned when FBA's products were delivered, and that this practice is, in fact, industrywide. Glickman offered no evidence contradicting the testimony offered by Sears. It is thus clear from the record that there was no genuine issue of material fact and that the district court properly entered summary judgment on behalf of Sears.[1]

Sears's counterclaim alleges that Glickman breached the Agreement by taking a position with a competitor and by soliciting FBA employees. Sears does not seek an injunction against Glickman, but return of a $50,000 stay bonus plus lost profits.

After reviewing the Agreement, we agree with the district court that Sears is not entitled to return of the $50,000 stay bonus. Sears has failed to make any connection between Glickman's $50,000 bonus and any damages suffered by Sears as a result of Glickman's affiliation with a competing business. And, the noncompete terms set forth in the Agreement are so broad (the entire state of Florida) that they are

---

[1] Glickman's argument that he was not a salesman is meritless. Glickman's job at FBA was to "generat[e] profits" through sales. (R.2-74 at 71.) Nor do we agree with Glickman that his signature was needed on the Bulletin to make Sears's commission policy applicable to him. Evidence in the record establishes that Sears's policy of not crediting a sale to a salesman until delivery for purposes of commission was an established company policy prior to issuance of the Bulletin. We also conclude that it was not an abuse of discretion to strike Glickman's untimely reply brief.

void under the applicable Illinois law. *See The Instrumentalist Co. v. Band Inc.*, 480 N.E.2d 1273, 1281 (Ill. App. Ct. 1985) ("[E]nforceability of a restrictive covenant in an employment contract is dependent on whether, given the particular facts of the case, the restraints imposed thereby are reasonably necessary for the protection of plaintiff's business from unfair or improper competition."). The district court therefore properly granted Glickman's motion for summary judgment on Sears's counterclaim.

**AFFIRMED.**