WELLS, Judge.
 

 Citigroup Realty, Inc. and its qualifying real estate broker, Enrique Enriquez, appeal from a final summary judgment awarding damages to Noelia Valdes for allegedly earned, but unpaid, real estate sales commissions. Because material fact issues exist, we reverse.
 

 The judgment on appeal stems from an alleged oral employment agreement between Valdes, a real estate agent, and Citigroup, a licensed real estate brokerage firm, and its qualifying agent, Enrique En-riquez. According to Valdes’ complaint, Citigroup/Enriquez and Valdes orally agreed that Valdes would procure purchasers ready, willing and able to purchase real estate, and, upon execution of purchase and sales agreements by such purchasers, would become unconditionally entitled to 80% of any real estate commission paid to Citigroup and Enriquez at the closing of such sales:
 

 At all times material hereto, Valdes and Defendants had an oral commission agreement whereby Valdes would be
 
 *384
 
 paid eighty percent (80%) of the real estate commissions earned on real estate for which Valdes procured a ready, willing, and able buyer (the “Contract”). By the terms of their Contract:
 

 a. Valdes’s duties were limited to procuring a ready, willing and able buyer for real property.
 

 b. Once a contract was signed, Valdes would be entitled to her share of the commission, and
 

 c. At closing of the contract, Defendants would pay Valdes her share of the commission.
 

 d. If Valdes should ever leave Defendants, she would still be paid all commissions earned by her if and when such sales contracts would close.
 

 Citigroup and Enriquez admitted that Citigroup had orally contracted with Valdes to pay 80% of the commissions it received to Valdes for purchasers she procured. It denied, however, that it became obligated to pay those commissions when a contract was executed by a procured purchaser. Rather, Citigroup and Enriquez by way of affirmative defense alleged that Citigroup and Valdes agreed that Valdes would be entitled to share in commissions paid to Citigroup at closing, but only if Valdes handled the transaction through completion. This affirmative defense was supported by Citigroup and Enriquez’ answers to interrogatories:
 

 [Q]. Did Defendants engage Plaintiff as a real estate sales associates [sic]?
 

 [A]. Yes, by Citigroup Realty, Inc.
 

 [[Image here]]
 

 [Q]. Did Valdes agree to waive her share of earned commissions in the event she left the Defendant?
 

 [A], Ms. Valdes was told that if she left she would not receive anything.
 

 That defense was also supported by En-riquez’ deposition testimony in which he testified that Citigroup was a one-broker operation and although it hired part-time employees from time to time, it had no staff to support sales other than those procured by Enriquez. Thus, according to Enriquez, part-time sales associates had to handle the contracts they procured through closing because Citigroup could not be burdened with activities necessary to support their closings:
 

 Q. Were there any other discussions at that time [when Citigroup agreed that Valdes could work from its brokerage office] regarding the split of the commission?
 

 A. In addition to the [80/20] split — let me tell you something about Citigroup. I was not interested in adding people to the company. Maybe that sound[s] weird, but I produce myself enough to handle the office. Noelia asked me to work, like the three or four other people I mentioned to you, and I had the best thing for her to come to work with the company.
 

 I was concerned about the — Noelia have [sic] so many responsibilities. Because she was involved with the title company, she was involved with other activities, she have [sic] kids, she’s very responsible for the family, stuff like that. I know that the time that she dedicated to all the — I was concerned, Noelia, listen, I would gladly — I will be happy that you come to work, but I need that you take care of the transaction completely. I had the experience before that people start working, I have — I become the clerk of the office and I don’t want to do that. The only thing, I said, ‘Noelia, I want you complete this transaction, you know how to do it. You need any help,’ she have [sic] my number, has everything. T want to help, but I need that you take care of this totally.’ I don’t want to be — like with other people, be
 
 *385
 
 ing assistant in doing so many clerk stuff that it take a lot of time for me.
 

 [[Image here]]
 

 Q. And you wanted her to do her complete job as a salesperson to earn the commission if she were going to get paid the 80/20 split?
 

 A. Yes.
 

 These discovery responses created a factual dispute as to the terms of the parties’ oral agreement and as to whether Valdes fell within one of the exceptions to the general rule that an employee is entitled to commissions earned during employment, but collected after termination.
 
 See Cornell Computer Corp. v. Damion,
 
 530 So.2d 497, 498 (Fla. 3d DCA 1988) (confirming that as a general rule, an employee is entitled to commissions earned during employment but collected after termination);
 
 see also Comerford v. Sunshine Network,
 
 710 So.2d 197, 198 (Fla. 5th DCA 1998) (recognizing three exceptions to the general rule that an employee is entitled to commissions collected post-termination, provided those commissions were “earned” during employment where: (1) a contract expressly provides otherwise; (2) a contract requires performance of services as an entirety, as where “an employee is required not only to make sales as part of his employment, but is also required to service that business as a condition of the right to a commission”; and (3) there is a recognized custom in the trade, business or industry that the right to payment of a commission terminates with the employment).
 

 Consequently, the court below erred in entering summary judgment in Valdes’ favor on her claim that the undisputed facts were that (1) under the parties’ oral agreement she was entitled to 80% of commissions paid on sales for which she procured a buyer who executed a contract; and (2) the parties’ agreement did not require her “to perform any services beyond procurement of an executed contract.” Moreover, on remand, Valdes should also be allowed to amend her complaint to state a claim, if indeed she has one, as to each defendant named herein since the complaint does not currently do so.
 

 Reversed and remanded with instructions.