IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

July 11, 2014

MARY ELLEN WRIGHT,                    )
                                      )
              Appellant,              )
                                      )
v.                                    )      Case No. 2D11-5307
                                      )
JOHN K. CZARIKI and KIMBERLY S.       )
CZARIKI,                              )
                                      )
              Appellees.              )
_____)


BY ORDER OF THE COURT:

        Appellant's motion for clarification is granted.  The court on its own motion

withdraws the previous opinion issued April 4, 2014, and substitutes the following

opinion in its place.  No further motions for rehearing or clarification will be considered

by the court.


I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.


JAMES BIRKHOLD, CLERK

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MARY ELLEN WRIGHT,                )
                                  )
          Appellant,              )
                                  )
v.                                )          Case No. 2D11-5307
                                  )
JOHN K. CZARIKI and KIMBERLY S.   )
CZARIKI,                          )
                                  )
          Appellees,              )
_____)

Opinion filed July 11, 2014.

Appeal from the Circuit Court for Polk
County; Karla F. Wright, Judge.

Richard R. Kosan, Brandon, for Appellant.

No appearance for Appellees.

DAVIS, Chief Judge.

Mary Ellen Wright challenges the July 20, 2011, final order and judgment entered in the breach of contract and foreclosure action she filed against John K. Czariki and Kimberly S. Czariki, his wife. We affirm the trial court's conclusion that Mrs. Wright is entitled to foreclose the mortgage, but as to the remaining issues, we reverse and remand for a new trial.

Mrs. Wright and her now deceased husband retired and sold their business and the related real property to one of their employees and his wife, the

Czarikis. The parties initially signed a document entitled "concept of sale," which set forth the general structure of the sales. This document contemplated that the sale of the stock in the corporation that owned the business would be separate from the sale of the real property on which the business was located. Separate down payments were to be made for each purchase, and the remaining balance for each sale would be set at $400,000. The concept of sale, however, was silent as to the interest to be paid on the remaining balances.

When the sales were completed, a note and mortgage on the real property was signed, indicating a lower unpaid balance of $375,000 and an eight percent interest rate on the amount owed. The mortgage was recorded, and the Wrights maintained possession of the note.

According to Mrs. Wright, a note on the stock purchase also was signed and indicated a balance that was similarly reduced from that contemplated in the concept of sale. That note also set the interest rate on the stock purchase balance at eight percent. Mrs. Wright maintains that the note was lost or was last in the possession of the Czarikis.

The Czarikis ultimately stopped paying on both obligations, and Mrs. Wright filed an action for collection on the two notes and for foreclosure on the real property. Her amended complaint included counts for foreclosure on the real property and collection on the note and mortgage held thereon, reestablishment of and collection on the lost note for the business, breach of contract, open account, unjust enrichment, and equitable lien. In response to the complaint, the Czarikis denied the existence of a

note on the stock transaction and denied that the parties had an agreement as to the rate of interest on that unpaid balance.

At trial, Mrs. Wright's CPA testified that he had prepared the concept of sale document and that the contemplated interest amounts were not included at that time because the parties were still determining what the rate should be. He also testified that eventually the parties agreed that the rate for both notes would be eight percent. He prepared an amortization schedule related to the stock sale for a $375,000 note, which was introduced into evidence. According to Mrs. Wright's CPA, the amortization schedule was prepared at the joint request of both the buyer and the seller and Mr. Czariki made a request that certain specific payments be designated within the schedule. From the time of the sale until the Czarikis defaulted, the CPA prepared and submitted yearly 1099 forms related to the interest amounts paid on the two loans for the Czarikis to use when filing their tax returns.

Contrary to the allegations Mrs. Wright made in her amended complaint, the Czarikis both testified that no note was signed regarding the stock sale and that there was no agreement as to the interest rate on that loan. When Mrs. Wright's counsel attempted to impeach Mr. Czariki with contradictory deposition statements regarding this interest rate, the trial court sustained the Czarikis' counsel's objection, and the use of the deposition statements was not allowed.[1] Mr. Czariki also testified that the concept of sale was just the initial plan for the sale and that the figures

---

[1]Counsel for the Czarikis objected that prior to trial, Mr. Czariki had not had the opportunity to read the transcript of the March 2007 deposition. Trial was held in September 2010.

ultimately changed to accommodate his need to reduce the amount of the down payment.

Maintaining that no interest was owed on the loan for the stock purchase, the Czarikis presented expert witness testimony that they had overpaid on that transaction. The trial court agreed, noting that the concept of sale did not specify a rate of interest to be applied to the stock purchase. The court therefore concluded that Mrs. Wright was not entitled to any relief with regard to her claims for amounts due on the sale of the stock. The court further concluded that the claimed balance due on the note for the purchase of the real estate should be offset by the amount the Czarikis overpaid for the stock.

The only count of Mrs. Wright's complaint on which the trial court made specific findings was the breach of contract claim, which indirectly addressed the foreclosure. The trial court found that the Czarikis breached the contract for the sale of the real property and set a damage amount that, if not paid, would result in the foreclosure of the mortgage on the real property.

On appeal, Mrs. Wright argues that the trial court erred (1) by refusing to consider parol evidence where the concept of sale document did not include all of the essential elements of the agreement, (2) by refusing to allow the impeachment of Mr. Czariki using the earlier deposition transcripts, and (3) by imposing a setoff of the "overpayment" amount where the Czarikis never requested that relief. We agree that we must reverse based on the inherently inconsistent findings encompassed on the face of the trial court's order.

With regard to Mrs. Wright's parol evidence argument, the trial court found that the written concept of sale document was the only contract setting forth the terms of the sale of the business stock. The trial court also determined that the document was not ambiguous and that parol evidence therefore should not be considered. Because the four corners of the concept of sale did not specify a rate of interest and because Mrs. Wright could not produce a note for the balance owed on the stock purchase, the court concluded that no interest was owed on the outstanding balance for the sale of the business stock. We disagree.

"[P]arol evidence . . . is proper when a contract's terms are incomplete or facially ambiguous." RX Solutions, Inc. v. Express Pharmacy Servs., Inc., 746 So. 2d 475, 476 (Fla. 2d DCA 1999). All parties agreed that the concept of sale did not complete the transaction at issue in this case. The parties dispute the amount of interest to be paid on the stock transactions, and that term is not included in the concept of sale. Mrs. Wright is therefore correct that the trial court should have considered parol evidence of the actual terms of the stock sale because the terms of the concept of sale document are incomplete.

Furthermore, in refusing to consider parol evidence, the trial court disregarded any testimony concerning the agreed-to terms of the sale itself. Yet the court acknowledged that the original amounts contemplated by the concept of sale were not the same amounts agreed to by the parties at the time of the transfer of title and stock. Thus, the trial court excluded the parol evidence related to the issue of interest under the agreement while at the same time accepting and relying on parol evidence as to the amount of outstanding principal owed on each of the transactions.

The trial court also calculated an offset amount for the "overpayment" the Czarikis made on the stock sale based on their payment of interest that was not contemplated in the concept of sale.[2] Not only was this offset not requested by the Czarikis, but their own expert testified that by his calculations, there was an overpayment of $9927.05 if indeed no interest was owed on the stock transaction. However, this is an amount that differs significantly from the $13,063.70 amount determined by the trial court to be the offset.

For all of these reasons, the trial court erred in entering final judgment on the claims related to the sale of the business stock. And because the offset amount for overpayment on the stock transaction was applied to the amounts owed under the note and mortgage for the real property, the errors spilled over into the trial court's rulings on the foreclosure related to the real property. Accordingly, although we affirm the trial court's determination that Mrs. Wright is entitled to foreclose the mortgage on the real property, we reverse the final judgment in all other respects. On remand, absent a settlement of this case, a new judge will have to be assigned to rehear the matter as related to damages and to the claims on the sale of the stock due to the untimely passing of the original trial judge.[3] A new trial is also necessary because of the erroneous preclusion of parol evidence necessary to determine the terms of the stock

---

[2]It appears these calculations are based on $375,000 as the amount owed rather than the $400,000 amount set forth by the original concept of sale. Thus this calculation is either off by $25,000 based on the face of the concept of sale or is another inherent acknowledgement by the trial court that the terms of the contract changed from those anticipated at the time of the concept of sale.

[3]We note that any new trial on the claims related to the sale of the stock may additionally require a recalculation of the damages amounts related to the foreclosure of the real property.

sale.  We further note that in any new trial, the use of the deposition transcripts for impeachment purposes should be allowed according to the rules of evidence.  <u>See</u> <u>Rothschild v. De Gasapari</u>, 287 So. 2d 341 (Fla. 3d DCA 1973) (reversing the trial court's denial of use of a deposition that had not been verified as required by Florida Rule of Civil Procedure 1.310(e)).

Affirmed in part, reversed in part, and remanded.


SILBERMAN and VILLANTI, JJ., Concur.