NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LINCARE HOLDINGS INC., )
)
     Appellant, )
)
v. )    Case No. 2D19-1758
)
SHARON D. FORD, )
)
     Appellee. )
_____)

Opinion filed September 30, 2020.

Appeal from the Circuit Court for
Hillsborough County; Paul L. Huey, Judge.

Kristin A. Norse, Stuart C. Markman, and
Robert W. Ritsch, Of Counsel, of Kynes,
Markman & Felman, P.A., Tampa, for
Appellant.

Christopher D. Donovan of Roetzel &
Andress, LPA, Naples, for Appellee.


CASE, Associate Senior Judge.

        Lincare Holdings Inc. appeals from a final judgment partially entered in

favor of its former employee, Sharon Ford, in a four-count action she brought against

Lincare regarding her alleged contractual entitlement to an annual bonus amount for her

job performance in 2016. Among other reasons specific to individually claimed bonus

amounts, the jury determined that Ms. Ford was not entitled to receive any payment for 2016 bonuses to which she might have otherwise been entitled because her employment ended prior to the payment of those amounts. However, the trial court granted Ms. Ford's motion for directed verdict related to this jury finding, and it accordingly entered a judgment in the amount of $509,765.65 in her favor. This was error because, under the factual and legal standards the trial court was required to apply, Ms. Ford was not entitled to payment for these bonus amounts according to Lincare's bonus policy. We therefore reverse the judgment entered in favor of Ms. Ford.

Ms. Ford worked in Lincare's in-house legal department as the director of its mergers and acquisitions team. Her compensation package included both a salary and an annual bonus. The bonus portion was based on a formula which gave Ms. Ford a percentage of Lincare's pro forma revenue from its acquisitions over the past year. Thus, the more money Lincare made from its acquisitions, the higher Ms. Ford's bonus was for that year. This bonus structure was entirely unique to Ms. Ford at Lincare, and she had individually contracted with the company's CEO for it. While the compensation contract was renegotiated several times over the years, Ms. Ford's most recent contract—the one now in dispute—was drafted in 2014 in an email exchange with Shawn Schabel, who was the CEO of Lincare at that time. Mr. Schabel emailed Ms. Ford the following terms:

> Base of 130k
> Bonus plan to include respiratory at 1.85 proforma revenue
> No guaranteed quarterly tiers
> Bonus paid out annually
> KC employee to report to this position
> M/W/F/ in LNCR office from 8am – 5PM
> T/Thurs at home office from 8am – 5PM

In 2016, Lincare completed two large, atypical transactions. In the first, Lincare's parent company helped Lincare acquire a significantly larger corporation than Lincare had ever acquired before. In the second, Lincare divested itself of a portion of its company. Ms. Ford applied her usual bonus formula to these two transactions and to other more typical ones that she had performed over the course of the year and calculated that her total bonus for 2016 should be $1,013,678—an amount that was far greater than past years due to the two atypical transactions. She submitted this amount to Lincare, but Lincare refused to pay it, claiming that Ms. Ford's bonus contract did not apply to the acquisition or the divestiture. As a result of this disagreement and an inability to negotiate a mutually agreeable resolution, Ms. Ford's employment with Lincare ended in early 2017.[1] Ms. Ford filed suit against Lincare shortly thereafter, seeking payment of the 2016 bonus amounts and raising clams for breach of contract, breach of implied contract, unjust enrichment, and quantum meruit.

Lincare presented two main defenses at trial. First, it argued that neither the large acquisition nor the divestment were subject to the bonus portion of Ms. Ford's compensation contract because of their unusual natures. Next, it argued that even if these transactions were subject to this bonus provision, Ms. Ford nevertheless was not entitled to the claimed 2016 bonus amount because she was no longer an employee by the time when the bonus was due to be paid in Spring 2017. This second argument relied upon Lincare's bonus policy, which was admitted into evidence. That policy

---

[1]Whether Ms. Ford resigned or was fired was factually disputed at trial and was not expressly resolved by the jury, but the most significant fact related to this issue for the purposes of this opinion is undisputed and is that Ms. Ford was no longer employed at Lincare when the 2016 company bonuses were paid to its employees in Spring 2017.

provided for a four-million-dollar bonus pool to be paid out to employees by a specified date each year for the past year's performance. It also provided that "all non-executive officer employees must be employed by the Corporations or their subsidiaries at the time of the bonus payment to receive the bonus." (Emphasis added.) There was testimony that Ms. Ford's bonuses each year were paid out of this bonus pool and were always paid at the same time as all of the other employees under the bonus policy. There was also testimony that the bonus policy applied to all of the administrative staff in Lincare's headquarters, including Ms. Ford.

Ms. Ford moved for a directed verdict at the close of evidence, but the trial court did not rule on her motion at that time and deferred until after the factual determinations were made by the jury. Three questions were submitted to the jury. The first asked whether the bonus provision in Ms. Ford's compensation contract applied to the large acquisition, and the second asked whether it applied to the divestiture.[2] The third asked whether the fact that Ms. Ford was not employed by Lincare at the time the bonuses were paid made her ineligible for her 2016 bonus. The jury answered that the bonus provision in Ms. Ford's compensation contract did not apply to the divestiture. As for the large acquisition, the jury answered that although the bonus contract applied to it, Ms. Ford ultimately became ineligible to receive that bonus because she was no longer an employee at the time when it was to be paid. The trial court then granted Ms. Ford's request for a directed verdict on the basis that the bonus policy could not affect Ms. Ford's eligibility for the bonus because she had fulfilled her employment obligations

---

[2]Claims for the other bonus amounts for the more typical work Ms. Ford performed in 2016 were also resolved in her favor in the directed verdict, and those claims are not argued directly as part of this appeal.

for 2016 under the compensation contract and Ms. Ford did not assent to the terms of the bonus policy.  Lincare appealed from the judgment entered following the grant of the motion for directed verdict.

We review a trial court's ruling on a motion for directed verdict de novo. Christensen v. Bowen, 140 So. 3d 498, 501 (Fla. 2014); Omega Ins. Co. v. Wallace, 224 So. 3d 864, 867 (Fla. 2d DCA 2017).  In so doing, "we apply the same test that the trial court applies in ruling on the motion."  Jackson Hewitt, Inc. v. Kaman, 100 So. 3d 19, 27 (Fla. 2d DCA 2011).

> A motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party.  In considering a motion for directed verdict, the court must evaluate the testimony in the light most favorable to the nonmoving party and every reasonable inference deduced from the evidence must be indulged in favor of the nonmoving party.  If there are conflicts in the evidence or different reasonable inferences that may be drawn from the evidence, the issue is factual and should be submitted to the jury.

Fell v. Carlin, 6 So. 3d 119, 120 (Fla. 2d DCA 2009) (quoting Sims v. Cristinzio, 898 So. 2d 1004, 1005 (Fla. 2d DCA 2005)).  In making this determination, we resolve any factual conflicts in favor of the nonmoving party—Lincare.  See id.

The motion acts to test the legal sufficiency of the evidence and "must be viewed as one that admits the truth of all facts in evidence and every reasonable conclusion or inference based thereon which is favorable to the non-moving party." Moisan v. Frank K. Kriz, Jr., M.D., P.A., 531 So. 2d 398, 399 (Fla. 2d DCA 1988). "Thus, where as here, a trial court enters a directed verdict, it implicitly holds that there is a lack of evidence to support one side of the case."  Id.  In reviewing that directed

verdict, we "must consider whether the trial court abused its discretion in deciding there was no evidence on which a jury could lawfully return [its] verdict." Id.

Lincare argues on appeal that the trial court erred by failing to apply the company's bonus policy to the factual findings made by the jury and that this was a misapplication of the law of contracts because the trial court was required by case law to look to the company's bonus policy to determine whether Ms. Ford's entitlement to her bonus terminated when her employment did, where Ms. Ford's agreement with Mr. Schabel was silent as to conditions for entitlement to the calculated bonus under the compensation contract. Ms. Ford essentially argues that her entitlement to all of the earned bonus amounts for 2016 vested under the contractual provisions in 2016 and that the Lincare bonus policy does not change that, and she further argues that she was never given notice of that policy as a change to the contractual obligation owed to her by Lincare.[3]

That an enforceable compensation contract existed and entitled Ms. Ford to a calculated bonus structure for her 2016 work performed thereunder is not in dispute, and no one has challenged the jury's findings that the acquisition qualified for

---

[3]To the extent Ms. Ford's argument that Lincare changed the terms of the compensation contract by approving its 2016 bonus policy despite testimony that she was paid under the terms of the past years' same bonus policies, involves factual determinations within the purview of the jury, the trial court considering the motion for directed verdict and this court on review of that decision must give deference to those findings and consider the facts presented in the light most favorable to Lincare as the nonmoving party. See Barco Chems. Div., Inc. v. Colton, 296 So. 2d 649, 651 (Fla. 3d DCA 1974) ("Defendant appears to contend that the terms of his employment were changed and that he was thereby relieved of the provisions of the contract. This factual conclusion would not have been justified upon a motion for directed verdict. Upon such motion, the plaintiff[, as the nonmoving party,] is entitled to all reasonable inferences from the evidence, and the record must be viewed in the light most favorable to plaintiff's position.").

bonus calculation under the terms of the contract or that the divestiture did not. We therefore accept and do not further address those factual matters related to the contract.

To the extent that "[t]he issue that gave rise to the directed verdict is a matter of contract interpretation," Omega Ins., 224 So. 3d at 867, it is likewise not in dispute that there is nothing in the plain language of the compensation contract detailing the terms, mechanisms, or schedules for the payment of any qualified bonus amounts. What remains at issue is whether the terms of the compensation contract vested any earned bonus amounts associated with transactions completed in 2016 without regard to the company's bonus policy that did not pay bonus amounts until Spring 2017 and that it then paid them only to employees who remained with Lincare at the time of payment—where it is also undisputed that Ms. Ford ceased being an employee prior to that time.[4] Compare Patwary v. Evana Petroleum Corp., 18 So. 3d 1237, 1238 (Fla. 2d DCA 2009) ("An employer's right to terminate an at-will contract does not entitle the employer to renounce compensation or other benefits that vest while the contract is in force."), with Parrish v. Gen. Motors Corp., 137 So. 2d 255, 258 (Fla. 2d DCA 1962) ("We hold that the bonus plan involved in the instant case was not so contractually interwoven with the terms and conditions of the plaintiff's employment as to confer upon

---

[4]Cf. Cmty. Design Corp. v. Antonell, 459 So. 2d 343, 345 n.4 (Fla. 3d DCA 1984) ("Here, the contract is oral and the evidence is reasonably susceptible to the conclusion that once the drawings were complete the duty to recommend and pay a bonus arose. To find otherwise would allow [the company] to induce extra efforts from its employees by oral promises and then hide behind a cloak of vagueness resulting from conflicting testimony.").

him a vested right to a bonus award for the year 1956, even though he was employed by the defendant and served through that period.").

"Where contracts are clear and unambiguous, they should be construed as written, and the court can give them no other meaning." Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A., 771 So. 2d 628, 631 (Fla. 4th DCA 2000). However, where a term, such as the time for payment, "is missing, it may be supplied in accordance with usual, reasonable, and customary practices." Vanater v. Tom Lilly Constr., 483 So. 2d 506, 508 (Fla. 4th DCA 1986); see also NCP Lake Power, Inc. v. Fla. Power Corp., 781 So. 2d 531, 537 (Fla. 5th DCA 2001) ("[E]xtrinsic evidence of custom and trade usage may be introduced to 'annex incidents to a written contract' regarding matters to which the contract is silent." (quoting Carr v. Stockton, 92 So. 814, 815 (Fla. 1992))). This extrinsic evidence, commonly referred to as parol evidence, "is proper when a contract's terms are incomplete or facially ambiguous." Wright v. Czariki, 142 So. 3d 924, 927 (Fla. 2d DCA 2014) (quoting RX Sols., Inc. v. Express Pharm. Servs., Inc., 746 So. 2d 475, 476 (Fla. 2d DCA 1999)); see also Fabian v. Ryan, 486 So. 2d 10, 11 (Fla. 3d DCA 1986) (explaining that parol evidence is admissible to complete but not to contradict or vary missing elements of an agreement).

"These theories cannot be used to vary the terms of an unambiguous contract." Indian Harbor Citrus, Inc. v. Poppell, 658 So. 2d 605, 606 (Fla. 4th DCA 1995).

> Common usage may be resorted to to clear up and make definite that which is doubtful or uncertain but it will not be employed to vary or contradict that which the parties have set down and agreed to in no uncertain terms. If the terms of the contract are clear and certain, they will not be disturbed by usage no matter how well settled it may be nor

> will usage be permitted to read express terms from the
> contract.

Roe v. Henderson, 190 So. 618, 619 (Fla. 1939).  These principles apply in situations involving a former employee seeking payment for bonuses or commissions, and outcomes vary depending on the express terms of the contract and the existence of company or industry custom when there are no express terms.

> Ordinarily an employee does not forfeit his right to
> commissions, already earned under his contract, by the
> termination of his employment, as by his discharge, unless
> the contract of employment provides otherwise or provides
> for the performance of services as an entirety, _or unless
> there is a recognized custom in the business that such right
> will terminate with the employment_.

E.H. Crump of Fla., Inc. v. Aikin, 571 So. 2d 1353, 1354 (Fla. 2d DCA 1990) (emphasis added) (quoting Cornell Computer Corp. v. Damion, 530 So. 2d 497, 498-99 (Fla. 3d DCA 1988)).  Thus, if there is an industry custom that an employee forfeits any bonus upon termination, and if the employee's contractual bonus provision is silent as to forfeiture, the industry custom applies.  Id.; see also Comerford v. Sunshine Network, 710 So. 2d 197, 198 (Fla. 5th DCA 1998) (recognizing that one of the three exceptions to an employee's general right to collect commissions after termination is when there is an industry custom that "the right to be paid a commission terminates with the employment").

The burden of proof in such circumstances rests with the plaintiff claiming entitlement to contractual commission or bonus amounts to show those amounts were earned at the time that employment ceased.  See Gulfstream Homes of Tampa, Inc. v. Crawford, 583 So. 2d 704, 705 (Fla. 2d DCA 1991) ("Defendant in effect argues that the inescapable import of that testimony was that at the time of the termination of plaintiff's

employment substantial such services remained to be performed by plaintiff for the sales which are the subject of this suit; be that as it may, plaintiff made no showing otherwise, and of course the burden of showing entitlement to the commissions was on plaintiff.  Thus, it was not proved that at the time her employment was terminated plaintiff had earned the commissions.").  And in these instances, the best evidence of an industry custom is the employer's own policy.  See Comerford, 710 So. 2d at 199 (explaining that company policy trumps custom and practice and thus that "[t]he company policy effectively becomes an implied term of the employment relationship"); Cornell Computer Corp., 530 So. 2d at 499 ("[T]he best guide for the courts to follow in interpreting the contractual obligation of the parties is the usages of the particular business involved . . . ." (quoting Trent v. Channel 10, WPLG–TV, Post–Newsweek Stations, Fla., Inc., 309 So. 2d 631, 634 (Fla. 3d DCA 1975))).

Under the factual deference that must be given in consideration of directed verdicts, the compensation contract emailed from Mr. Schabel to Ms. Ford in 2014 was not a complete recitation of the terms of how the bonus provision vested or was to be paid.  In other words, while it provided that the bonus was to consist of 1.85 percent of Lincare's pro forma revenue and that it was to be paid annually, the contract was silent as to any further details regarding when and how the contractual bonus amount vested or would be paid to Ms. Ford.  Nor did it otherwise purport that it was the complete integration of the parties' agreement by the inclusion of a merger clause.  See Lowe v. Nissan of Brandon, Inc., 235 So. 3d 1021, 1027 (Fla. 2d DCA 2018) (describing merger clauses).  In such situations, we look to industry standard—or company policy— to fill in the gaps.  See Wright, 142 So. 3d at 927; E.H. Crump, 571 So. 2d at 1354.

Lincare's bonus policy stated that an employee is not entitled to a bonus unless that employee is still employed by Lincare at the time when the bonus is to be paid.  There was also testimony that this policy applied specifically to Ms. Ford.  For the purposes of a directed verdict, Ms. Ford must admit these facts and the trial court had to consider them in the light most favorable to Lincare.  See Fell, 6 So. 3d at 120.  And given that Ms. Ford's compensation contract was otherwise incomplete in providing such terms, we look to Lincare's bonus policy to fill in any missing terms.  See Wright, 142 So. 3d at 927; E.H. Crump, 571 So. 2d at 1354.  Because Ms. Ford's bonus contract was silent as to whether she had to be employed by Lincare at the time when the bonus was due to be paid, and because the bonus policy does speak to that issue, "[t]he company policy effectively [became] an implied term."  See Comerford, 710 So. 2d at 199.

As a factual matter, Ms. Ford was not employed by Lincare at the time when the bonuses were paid, and as a legal matter, the trial court erred by directing a verdict contrary to these findings by concluding that Ms. Ford was entitled to the bonus as a matter of her compensation contract without regard to the bonus policy under these circumstances.  The facts in this record support that the parties already understood the bonus policy as a source of implied terms for Ms. Ford's bonus contract because, although the contract is silent as to when bonuses are to be paid, Ms. Ford's bonuses were always paid at the same time as the other employees and from the same bonus pool established by the bonus policy.  This remains unchanged despite Ms. Ford's argument on appeal that Lincare waived this argument by citing different case law to the trial court.

"[T]o be preserved for appeal, 'the specific legal ground upon which a claim is based must be raised at trial and a claim different than that will not be heard on appeal.' " Aills v. Boemi, 29 So. 3d 1105, 1109 (Fla. 2010) (alteration in original) (quoting Chamberlain v. State, 881 So. 2d 1087, 1100 (Fla. 2004)). A party need not "cite the exact cases on point to the trial court" in order to preserve a claim, so long as its objection is "sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefor." See Baskin v. State, 898 So. 2d 266, 267 (Fla. 2d DCA 2005) (recognizing that citation to legal authority is not the critical component of preserving an issue in the trial court for appeal); cf. State v. Casey, 908 So. 2d 600, 601 (Fla. 2d DCA 2005) (quoting § 924.051(1)(b), Fla. Stat. (2004)). Lincare repeatedly argued to the trial court that Ms. Ford was not entitled to the bonus because of the bonus policy's requirement that the employee be employed at the time the bonus was paid. This was sufficiently specific to apprise the trial court as to its argument on appeal, and it is immaterial that Lincare did not cite to the same cases or use the same exact language at trial as it does on appeal. See id. Lincare's argument was adequately preserved, and a directed verdict in Ms. Ford's favor was error as a matter of law.

We therefore reverse and remand for reinstatement of the jury's verdict. See Nunez v. Lee County, 777 So. 2d 1016, 1016-17 (Fla. 2d DCA 2000) (reinstating the jury's verdict where the trial court erroneously granted a motion for directed verdict). We note that the reinstatement of the verdict reached by the jury will necessarily result in the imposition of a judgment consistent with those findings. Whether any matters beyond the issue of the claims related to breach of contract, such as Ms. Ford's claim

for unjust enrichment, remain pending are matters resolved by the parties and the trial court and are not reached by the limited scope of this appeal.

Reversed and remanded with instructions.


MORRIS and ATKINSON, JJ., Concur.