# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D19-4293
_____

RICHARD FANNIN,

    Appellant,

    v.

ACE HUNTER,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Adrian G. Soud, Judge.

September 22, 2021

B.L. THOMAS, J.

Appellee sought damages under section 767.01, Florida Statutes (2017), alleging Appellant's dog, a nine-year-old Weimaraner named Finley, caused him both physical and neurological injuries. Appellee and his wife agreed to watch Finley for a few days. They had watched Finley and other friends' dogs in the past without issue. Appellee and his wife also owned two young dogs at the time: a German Shepard and a Golden Retriever.

At trial, Appellee and his wife testified that one night while they were watching Finley, Appellee took Finley to the back yard. Appellee turned his back to Finley and began walking to the house. Appellee alleged that Finley then ran behind him and knocked him down, rendering him immediately unconscious. But because his

back was turned, Appellee did not see Finley run toward him. After Appellee regained consciousness, he made his way to the back door of his house and alerted his wife that he had fallen.

There was conflicting testimony and evidence regarding details of the incident. Both Appellee and his wife testified that Finley was the only dog outside at the time of the incident, that their dogs were in their crates at the time of the incident, and that they did not allow their dogs to go outside with Finley if the dogs were not on a leash. But Appellant's wife testified that Appellee informed her the incident occurred when he let the "dogs" outside. And Appellee's medical report indicated that one of Appellee's dogs caused the injury.

There was also conflicting testimony regarding what happened the day following the incident. Appellee and his wife testified that Appellee's wife sent Finley from the back yard "unescorted" to Appellant's wife. But Appellant's wife testified that Appellee brought Finley to her on a leash. Appellant's wife also testified that she observed Appellee trying to prevent at least three dogs from escaping from behind the gate. This contradicted Appellee's and his wife's testimony that their dogs were not allowed outside with Finley while Finley was not on his leash.

The jury rendered a verdict for Appellant, finding that Finley was not the legal cause of Appellee's alleged injuries. Appellee then moved to set aside the jury verdict for entry of a directed verdict or for a new trial. The trial court granted the motion for directed verdict and ordered a new trial on the issue of damages. We reverse.

## A.    Directed Verdict

We review a trial court's grant of a motion for directed verdict de novo. *Rosa v. Dep't of Child. & Fams.*, 915 So. 2d 210, 211 (Fla. 1st DCA 2005).

The trial court must consider motions for directed verdict with "extreme caution, because the granting thereof amounts to a holding that the non-moving party's case is devoid of probative evidence." *Houghton v. Bond*, 680 So. 2d 514, 522 (Fla. 1st DCA 1996) (citation omitted). "A motion for directed verdict should not

2

be granted unless the trial court, after viewing the evidence in the light most favorable to the non-moving party, determines that no reasonable jury could render a verdict for the non-moving party." *Id.* The trial court must consider the evidence in its entirety in determining whether a reasonable jury could render a verdict for the non-moving party. *Dep't of Child. & Fams. v. A.L.*, 307 So. 3d 978, 982 (Fla. 1st DCA 2020). But the trial court is forbidden from weighing the evidence or assessing the witnesses' credibility itself, "and must deny a directed verdict 'if the evidence is conflicting or if different conclusions and inferences can be drawn from it.'" *Duclos v. Richardson*, 113 So. 3d 1001, 1004 (Fla. 1st DCA 2013) (quoting *Moisan v. Frank K. Kriz, Jr., M.D., P.A.*, 531 So. 2d 398, 399 (Fla. 2d DCA 1988)).

Under section 767.01, dog owners are strictly liable "for any damage done by their dogs to a person." § 767.01, Fla. Stat. (2017). A plaintiff need only show the dog acted in "an affirmative or aggressive" manner. *See Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985). Therefore, a directed verdict can only be sustained on appeal if there was *no evidence* rebutting the fact that Finley caused the incident. *Cf. Bozarth v. Barreto*, 399 So. 2d 370, 370 (Fla. 3d DCA 1981) (per curiam) (affirming judgment entered for defendant where there was "sufficient evidence in the record for the jury to conclude, as it did, that the plaintiff[']s injuries were not proximately caused by any aggressive or affirmative act directed against said plaintiff by the defendant's dog"); *see also English v. Seachord*, 243 So. 2d 193, 195 (Fla. 4th DCA 1971) (holding that the trial court did not err in refusing "to grant a directed verdict in favor of plaintiff, because disputed issues of fact existed as to [whether defendant's dog was the] actual and proximate cause" of plaintiff's injuries).

Appellee's theory of the case was that Finley "ran into the back of him causing his legs to be knocked out from under him, causing him to land on concrete on his head and right side resulting in three broken ribs, a fractured elbow and a head injury." Appellee testified that Finley was the only dog outside in the back yard at the time of his fall and the only dog that could have caused him injury.

But the record contains evidence that conflicts with Appellee's version of events. The medical record of the doctor who saw Appellee the day after the alleged accident included a notation that Appellee presented with "bilateral elbow pain after *his dog* hit him resulting in a fall." There were discrepancies in the testimony as to the number of dogs at Appellee's house at the time of the incident, and the witnesses provided contradictory testimony to whether Appellee had let the "dogs [plural] out into the yard." Thus, whether Finley—or some other dog—caused injury to Appellee was very much in question.

The trial court ignored this conflicting testimony in granting the motion for directed verdict. The trial court found that Appellee and his wife both testified that there were only three dogs at their residence and that their dogs were not let outside at the same time as Finley; that Appellee's wife consistently identified Finley as the only dog outside at the time of the incident; that Appellant's wife's testimony that Appellee told her he let the "dogs" out did not rebut Appellee's testimony; that the medical records stating it was one of Appellee's dogs that caused of the injury was "not reliable evidence;" that Appellee's wife brought Finley out to Appellant's wife on a leash; and that Appellant's wife's testimony regarding the number of dogs in Appellee's back yard the morning after the incident was irrelevant to the issue of which dog caused Appellee's injury the night before. The jury, however, could have drawn different conclusions and inferences than the trial court. And, in fact, they did.

The jury not only had to assess *how* Appellee was injured, but also *whether* Appellee was injured. Evidence presented at trial called into doubt whether Appellee sustained the injuries he alleged. Appellee claimed that he suffered a head injury from the encounter with Finley, but Appellee did not report a head injury of any kind when he saw the doctor the day after the incident. Rather, it was not until six months later that Appellee first reported that he lost consciousness after the alleged incident. And after the alleged fall, Appellee refused to go to the emergency room or call 911 even though his wife begged him to do so. But in her pre-trial deposition, Appellee's wife denied any discussion about the 911 call. Appellee and his wife also claimed that after the incident they drove around "for an hour" looking for a hospital or

4

urgent care facility to seek treatment but could not find any local hospitals—even after using "Siri" and despite living in Jacksonville for more than a decade.

Finally, the jury also had to assess Appellee's credibility with respect to his recollection of events, which the trial court was forbidden from doing in ruling on a motion for directed verdict. *See Duclos*, 113 So. 3d at 1004. The jury instructions specifically stated that in evaluating a witness's credibility the *jury* could consider "the ability of the witness to remember the matters about which the witness testified; and the reasonableness of the testimony of the witness, considered in the light of all the evidence in the case and the light of your own experience and common sense." Fla. Std. Jury Instr. (Civ.) 601.2(a). The evidence presented at trial raised a question for the jury as to the nature and extent of Appellee's alleged memory loss. First, Appellee testified that Finley ran into him from behind knocking him down. But Appellee's psychotherapist testified that Appellee informed him that Finley jumped on him knocking him down. Second, when questioned about how he could answer questions with his memory issues, Appellee testified that problems with his memory do not arise unless there are multiple people talking. But Appellee's wife recounted a story in which Appellee's memory failed him during a private conversation. The trial court, however, summarily found that Appellee's memory issues and brain injury were "insufficient to support the jury['s] verdict" because Appellee never changed his testimony with respect to Finley's identification. A reasonable jury could have drawn a different conclusion or inference of Appellee's credibility or recollection of events based on this testimony and their instructions. *Duclos*, 113 So. 3d at 1004.

The trial court also erred when it found that Appellee's testimony about how his alleged fall occurred was "uncontroverted" and that it found Appellee's testimony "to be credible and his version of events plausible." At the same time, the trial court found testimony by Appellant's wife to be "insufficient to provide the jury any basis upon which to base its decision as to the identity of the dog that impacted Plaintiff and caused his fall and resulting injuries." The trial court's focus on "the identity of the dog" ignores that the jury could have entirely rejected Appellee's version of events and found that there was no encounter

5

with any dog. *See Jordan v. Brown*, 855 So. 2d 231, 234 (Fla. 1st DCA 2003) (holding that the jury's verdict was not against the manifest weight of the evidence where plaintiff's injury claim turned largely on her testimony and the defendant dog owners introduced considerable testimony and evidence to impeach the plaintiff's testimony regarding the alleged injury). The trial court also weighed the evidence in granting Appellee's motion for directed verdict when it noted, Appellee's treating physician's "own testimony and acknowledgement at trial that the notes may not be accurate is alone enough to eviscerate any probative value of the written medical record as to the identity of the dog that caused [Appellee's] injuries."* Thus, we hold the trial court erred in granting Appellee's motion for a directed verdict

In sum, whether Appellee had been injured in an incident involving Finley (or any dog) and the extent of his injuries were hotly contested issues at trial. Appellee's case turned on his testimony. Appellants introduced testimony showing inconsistencies in Appellee's version of events. Thus, the "jury was entitled to judge [Appellee's] credibility and accept or reject [his] testimony on all issues." *Id.* Viewing the evidence in its entirety, a reasonable jury could conclude that Finley was not the cause of Appellee's alleged injuries. *A.L.*, 307 So. 3d at 982.

---

* Appellee's treating physician testified that this section of the medical report was a "rough approximation" rather than a "word-by-word statement[] provided by the patient," and discouraged the jury from relying on it as a document establishing the nature of the incident. But he also testified that he did not have personal knowledge of how the incident occurred and that his scribe took this portion of the report outside of his presence. The jury instructions stated that in evaluating witness credibility the jury was permitted to consider "the means and opportunity the witness had to know the facts about which the witness testified." Fla. Std. Jury Instr. (Civ.) 601.2(a). A reasonable jury could have accorded less weight to the physician's statement regarding the accuracy of the medical report given his lack of personal knowledge.

## B.  New Trial

A court may grant a new trial "on all or a part of the issues" before it, including damages. Fla. R. Civ. P. 1.530(a); *see, e.g.*, *Taylor v. Ganas*, 443 So. 2d 251, 253 (Fla. 1st DCA 1983). But the trial court cannot simultaneously grant a new trial and a directed verdict. *Frazier v. Seaboard Sys. R.R., Inc.*, 508 So. 2d 345, 346 (Fla. 1987) (holding that orders granting a new trial and a directed verdict "are mutually inconsistent and may not be granted simultaneously."). "At most, the trial court may grant one and alternatively grant the other on the *express condition* that the latter only becomes effective if the former is reversed on appeal." *Id.* (emphasis added). If an order granting a new trial on certain issues fails to state the reasons for which it was granted with "sufficient clarity," then "it must be reversed as to [those] issues." *Taylor*, 443 So. 2d at 253; *see also* Fla. R. Civ. 1.530(f) ("All orders granting a new trial shall specify the specific grounds" for which they are made.).

Here, the trial court's order expressly granted a new trial with respect to *damages*, not as an alternative to the directed verdict on the issue of *liability*. Thus, our reading of the order leads us to conclude that the trial court meant to grant a new trial on damages *only if* the directed verdict on liability was upheld. *Cf. Frazier*, 508 So. 2d at 346. Because we hold that the trial court erred in granting directed verdict, the order granting a new trial must be reversed.

Accordingly, we reverse the trial court's order granting Appellee's motion for a directed verdict and a new trial to determine damages. We direct the trial court to reinstate the jury's verdict and enter judgment in accordance with that verdict.

REVERSED.

ROWE, C.J., and M.K. THOMAS, J., concur.

7

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Rhonda B. Boggess, Marks Gray, P.A., Jacksonville, for Appellant.

Michael J. Korn, Korn & Zehmer, P.A., Jacksonville; Joshua A. Woolsey and Nicholas W. Morcom, Woolsey Morcom, PLLC, Ponte Vedra, for Appellee.